HIGGINS, Justice.
 

 The accused was indicted for the murder of W. B. Jacobs, a police officer in the City of Shreveport, Caddo Parish, Louisiana. He was tried, found guilty by the jury as charged, and was sentenced to death. He appealed and relies upon eight bills of exception for the annulment of the conviction and the sentence.
 

 Bill of exception No. 1 was reserved to the ruling of the trial court in permitting the State’s witness to testify to what transpired in his presence in the dance hall where the killing took place, even though he was unable to identify the accused as the man who shot and killed the police officer. The note of evidence taken before the jury, in connection with this bill of exception, is as follows:
 

 “Albert Green was on the witness stand, a witness for the State, and having been first duly sworn, testified as follows:
 

 “Direct Examination — By Mr. Galloway: ■ “Q. Albert, just before you heard the shots, what happened? A. Just before I heard the shots ?
 

 “Q. What was your answer? . A. I seen the officer reach back for his gun.
 

 “Q. I want to ask-you about what you said just before, we stopped just now—
 
 *403
 
 did you see the officer Jacobson? (Jacobs) (Brackets ours.) A. Yes, sir.
 

 “Q. What was he doing?
 

 “Mr. Mabry: At that point, if it please the Court, we object to the answer to that question unless he identifies the defendant with any act that was done at that time by the officer or anyone else.
 

 “Mr. Galloway: How could we connect him, Your Honor, before the witness answers.
 

 “The Court: The accused was identified by the witness before the witness answered that question. Overruled.
 

 “Mr. Mabry: To which we reserve a bill.
 

 “The Court: If the witness answers as is anticipated by the court, and'as he previously answered before the court reporter was called in, the officer was attempting to put a man out of the dance hall, and it is admissible, and the jury will draw its conclusion as to whether the accused was the person on whom the attempt was made to be removed from the dance hall.
 

 “Mr. Mabry: The defense also objects to the statement in the court’s ruling about what the jury may do, as commenting on the facts, and reserve a bill.
 

 “The Court: The objection is overruled, as it is always the function and the duty of the jury to draw its conclusion from the evidence adduced from the witness stand. The'court merely stated that the jury would draw its conclusion from the evidence which has been admitted.
 

 “Mr. Mabry: To which ruling I reserve a bill.
 

 “Q. What was the officer doing? A. He was trying to put the man out of the hall.
 

 “Mr. Mabry: Same objection.
 

 “The Court: Same ruling.
 

 “Mr. Mabry: To which ruling I reserve a bill.
 

 “Q. What was the officer doing to put the man out, you say he was trying to pul him out, what was he doing?
 

 “Mr. Mabry: We object to the question on the part of the District Attorney on the ground that it is leading.
 

 “The Court: Objection overruled. He is merely repeating what the witness stated and it is not leading.
 

 “Q. Do you understand the question, Albert ? A. Sure.
 

 “Q. All right, in what way was the officer trying to put the man out, what was he doing? A. The officer tapped the man oh the shoulder. He did not have any ticket and he was attempting to put him out.
 

 “Mr. Mabry: We object to the question further, that he does not know whether he had a ticket or not.
 

 “The Court: The witness says he did not.
 

 “Q. The officer tapped the man on the shoulder? A. Yes, sir.
 

 “Q. What did the man do when the officer tapped the man 'on the shoulder? A. The man stepped back from the officer.
 

 
 *405
 
 “Q. What did the man do then when he stepped back from the officer? A. He run his hand in his back pocket.
 

 “Q.
 
 He ran his hand in his back pocket? A. Yes, sir.
 

 “Q. What did he do then — the man?
 

 “Mr. Mabry: We now enter the same objection as in the beginning to this witness’ testimony, on the ground, that the defendant has not been identified, and ask that the objection be made general.
 

 “The Court: The objection is overruled again, and I again state that the jury will draw its conclusion as to whether or not the accused was the man in question.
 

 “Mr. Mabry: I reserve a bill to the ruling.
 

 “Q. What did the man do then, Albert; did he run his hand — back pocket? A. It seemed like he did.
 

 “Mr. Mabry: We object to what he said it seemed like he did.
 

 “TheJ Court: Sustained.
 

 “Q. What did he do then — not what it seemed to you he did — what did you see him do? A. After that I seen the. officer bring out his gun and I turned around and fell on the floor.
 

 “Q. You fell on the floor? A. Yes, sir.
 

 “Q. Did you see anything else? A. I did not see anything else.
 

 “Q. Did you hear anything else? A. Sure.
 

 “Q. What did you hear? A. I heard four shots.
 

 “Q. Four shots? A. Yes, sir.
 

 “Q. How far apart were those shots, Albert? A. I heard .two shots — two shots were fired close to each other and in about five minutes two more shots were fired.
 

 “Q. In about five minutes? A. Yes, sir.
 

 “Q. What were you doing all that time ? A. Laying on the floor.
 

 “Q. You were still upon this platform where the orchestra was? A. Yes, sir.
 

 “Q. Did you leave there at all? A. No, I did not leave there.
 

 “Q. You did not leave there? A. No, sir, not until the hall was cleared. .
 

 “Q. What was going on in there after the shooting started? A. After the shooting started? I do not know. I was laying on the floor.
 

 “Q. After the shooting was over, what did you do? A. After the shooting was over I got up.
 

 “Q. Did you see anything then? A. Yes, sir.
 

 “Q. What did you see? A. I seen an officer laying down at the door.
 

 “Q. What officer? A. The officer that was in the hall.
 

 “Q. Where was he? A. He was up to the front door. ,
 

 “Q. The front door? A. Yes, sir. 1
 

 “Q. What did you do then, Albert? A. I did not do anything then.
 

 
 *407
 
 “Q. Do you think you would recognize the. man that you saw the officer speaking to there on the dance hall floor, if you saw him again?
 

 “Mr. Mabry: We object to the question being entirely leading.
 

 “The Court: Overruled.
 

 “A. No.
 

 “Q. You do not think you could remember the man’s face? A. No.”
 

 In his per curiam to this bill of exception, the trial judge assigns his reasons for his ruling as follows:
 

 “Before the State witness, Albert Green, testified, a number of other witnesses had given their testimony. These witnesses whó preceded Albert Green to the witness stand, together with Albert Green himself, and several Other witnesses who followed him on the witness stand, established the following uncontradicted state of facts:
 

 “On the evening of November 14, 1941, a-,group of negroes were having a dance at the negro Odd Fellows Hall in the City of Shreveport. Admission to the dance was by ticket, for which a charge of thirty-five cents per person was made. In order to identify those who had paid admission, it was the practice for the ticket taker at the entrance door to take up the ticket from each individual and clip or pin the same on • to the lapel of the patron’s coat. About ten o’clock in the evening, after the dance had been in progress for an hour or more, a negro came to the dance hall and approached the cashier’s desk where the tickets were sold. The cashier, a negro woman, spoke to this individual and said ‘ticket please’. The individual inquired, ‘how much are they’, to which the ticket seller replied ‘thirty-five cents’. Whereupon' the individual replied ‘thirty-five cents, hell’ and walked towards the entrance of the dance hall, where the ticket taker, a negro man, Harry Walker, was collecting the tickets. The man who had refused to purchase his ticket went on into the dance hall ignoring the ticket taker, who followed him into the dance hall with the view of either collecting his ticket or requesting him to leave the dance hall.
 

 “The deceased, Police Officer W. 'B. Jacobs, was a special officer assigned to police the dance at this place at the request of the negro operators and patrons of the place. The officer was in uniform and, at the time of the above occurrence, was on duty inside the dance hall.
 

 “The negro ticket taker, Walker, was seen to converse with the individual who had entered the dance without his ticket and then to approach the Police Officer and point toward the intruder. The Police Officer then approached the intruder, tapped him on the shoulder and requested that he leave the dance. The' negro intruder responded to this action by the Officer by backing away from him several feet and reaching in his pocket and drawing a knife. The Police Officer then drew his pistol and told the negro not to come upon him that he didn’t want to shoot him.- The negro began to advance toward the officer who then fired a shot
 
 *409
 
 over the negro’s head.- Instead of stopping, the negro continued to approach the officer who thereupon fired the second shot, which struck the negro, probably a glancing shot, causing a shallow flesh wound in the lower left chest.
 

 “After these shots pandemonium ensued with the negroes that were in the place, rushing to all exits to get out. The officer then walked to the front door of the dance hall and stood in the doorway, facing the rear of the hall. The negro intruder went out a side door and around to the front door and attacked the Police Officer from the rear as he stood 'in the front doorway. A struggle ensued in which the negro intruder, a young and very powerful man, threw the officer to the floor and took the officer’s gun away from him. Then, as the officer lay prostrate on the floor on his back and, as he was attempting to raise himself by one elbow, the negro intruder stood at his feet and fired a shot into the body of the officer on the floor. The negro then threw the gun upon the floor by the officer’s side and fled down the stairway to the ground floor exit and away from the scene.
 

 “The bullet struck the officer on the outer and lower portion of the left thigh, ranging upward through the thigh toward the pelvic region, severing the femoral artery. The officer was shortly thereafter taken to the Charity Hospital where he died from loss of blood a few minutes after his arrival.
 

 “The negro intruder, a soldier, after leaving the dance hall got someone to take him to the Post Hospital at Barks-dale Field, a few miles South of Shreveport, where he was examined a short time thereafter by the Deputy Coroner of Cad-do Parish, after he had already received’ treatment from the hospital physicians. He had been shot twice, once a glancing shot in the left chest which merely cut the outer skin, the second a shot through the fleshy part of the right forearm. This shot through the forearm either occurred toward the back center of the dance hall where the shooting started or. at the front door where the final struggle occurred.
 

 “When first interviewed by the Deputy Coroner at the Barksdale Field Post Hospital, as stated above, the defendant, George L. lies, denied to the Coroner that he had shot Police Officer Jacobs and stated that he merely had been in the dance hall and was the victim of wild shots from the officer’s gun, while the officer was shooting at another negro. Later on the defendant, George L. lies, made oral and written statements, the latter signed by him, to the Deputy Coroner and other witnesses, including some of the officers and enlisted personnel in Barks-dale Field. In this latter statement, the defendant, George L. lies, admitted shooting the Officer Jacobs as he lay on the floor of the dance hall with the officer’s own gun which he, the defendant, had taken away from the officer. All of the witnesses who observed the trouble at the dance hall were unanimous in their statements that the negro intruder with whom Officer Jacobs had the trouble in the dance hall and who later shot him, was wearing a two-toned, brown or tan and yellow jacket, with writing on the back. Such
 
 *411
 
 a jacket was worn by the defendant, George L. lies, when he entered the Barks-dale Field Post Hospital and was delivered to the Deputy Coroner. The jacket had a gunshot hole in the left side, corresponding to the through and through shot which penetrated the defendant’s right forearm. The jacket was bloody on the right sleeve as well as on the inside of the left front. Also delivered to the Coroner at the Post Hospital was a reddish handle knife, taken from the defendant, George L. lies, when he entered the hospital, which knife was very bloody on both the blade and handle.
 

 “It developed in the testimony that th.e negro intruder at the dance hall was a stranger to most of the negroes who were dancing and to the witnesses who testified in the case, however, some of the witnesses who testified, both before and after the witness Albert Green testified, positively identified the accused, George L. lies, in the Court room as the negro with whom the officer had the trouble at the dance hall and who shot the officer.
 

 “It is true that the witness, Albert Green, did not identify the defendant in the Court room as did some of the other witnesses from the stand, but, when bill of Exception No. 1 was reserved, the witness Albert Green was being interrogated by the District Attorney concerning what he, the witness, had seen of the encounter between the deceased officer and the negro who had crashed the dance, as hereinbefore stated.
 

 “In this connection, the evidence from all the witnesses established conclusively that there was only one instance of trouble at the dance hall that night, namely, the encounter between Police Officer Jacobs and the intruder who had crashed the dance and who shot the officer and who was later identified as the defendant, George L. lies. Although the witness Albert Green was unable to identify the defendant in Court, he was testifying concerning the one occurrence which culminated in the death of Police Officer Jacobs.
 

 “As will be shown from the note of evidence, the District? Attorney had already interrogated the witness, Albert Green, concerning the first encounter between Police Officer Jacobs aiid the intruder and the witness had previously answered that the officer was attempting to put a man out of the dance hall (see page 2, lines 11-16 of the note of evidence.). Counsel for the defendant objected to the testimony of the witness, Albert Green, ‘unless he identifies the defendant with any act that was done at that time with the officer or any one else’, and asked that the Court Reporter be called to preserve his objection. This was done, as will be shown by the note of evidence. After the Court Reporter was called and in order to present the situation that had occurred before the Court Reporter was called, the question on page one of the note of evidence was asked and answered and then the District Attorney propounded to the witness the same question that-had been previously propounded to him before the arrival in the Court room of the Court Reporter, namely, ‘What was he doing?’
 

 
 *413
 
 “The objection to this question was overruled by the Court for the reason that the accused was identified by the witness before the witness answered the question.
 

 “The testimony of the witness, Albert Green, objected to by counsel for the defendant, was obviously admissible for the reason that the man with whom the of-ficer was having the difficulty had already been identified as the defendant on trial for the further reason that there was only one encounter and only one person with whom the officer had such trouble during the evening. Moreover, the question of sufficiency of the identification of the defendant as the man with whom the officer had the difficulty was a question for the Jury to determine from all the evidence and the Court so stated in overruling the objection.
 

 “Furthermore, the defendant himself in his written and signed statement admitted that he was the man who shot the officer during the encounter which was being testified to by the witness, Albert Green, and which was testified to by numerous other witnesses, both before and after the witness, Albert Green, testified. This written and signed statement of the defendant had already been filed in evidence, read to and examined by the Jury without any objection from the defendant or his counsel.”
 

 The issue before the court was whether or not the State witness should be permitted to testify as to what occurred on the occasion in question, unless he first identified the accused. Previous to the time that Albert Green took the Stand, the State had connected the accused with the altercation and killing in the dance hall through other eyewitnesses, as well as by his own statements, verbal and written, admitting that it was' he who killed the police officer. Furthermore, it had been shown that there had been only one difficulty at the dance hall that evening when the police officer was killed. Therefore, the testimony of Albert Green, as to the details of the trouble, even though he was unable to identify the accused as the man who killed the policeman, was relevant, material and admissible. The ruling of the trial judge is obviously correct.
 

 Bill of exception No. 2 was also reserved during the taking of the testimony of Albert Green, a State witness, and therefore, the part of the stenographic transcript already quoted likewise reflects what happened. when this bill was reserved. It will be noted that in overruling the objection that the witness could not testify to the facts unless he first identified the accused, the judge stated: “If the witness answers as is anticipated by the court, and as he previously answered before the court reporter was called in, the officer was attempting to put a man out of the dance hall, and it is admissible, and'the jury will draw its conclusion as to whether the accused was the person on whom the attempt was made to be removed from the dance hall.” In reserving his bill of exception to this'ruling, counsel for the defendant stated: “The defense also objects to the statement in the court’s ruling about what the jury may do, as commenting on the
 
 *415
 
 facts, and reserve a bill.” The court rejoined: “The objection is overruled, as it is always the function and the duty of the jury to draw its conclusion from the evidence adduced from the witness stand. The court merely stated that the jury would draw its conclusion from the evidence which, has been admitted.” The defense lawyer then stated: “To which ruling I reserve a bill.”
 

 From the foregoing, it is clear that the objection to the court commenting on the facts did not refer to the judge’s statement previously made, that is, “The accused was identified by the witness before the witness answered that question. Overruled.”
 

 The judge in his per curiam to this bill confined his reasons for overruling the defendant’s objection, which is the basis of bill of exception No. 2, to the second statement made by his Honor and did not include the first statement made by him.
 

 Counsel for the defendant, in his brief, in connection with bill of exception No. 2, has treated the judge’s prior or first statement as also having been objected to on the ground that it was a comment upon the facts by the judge. As the matter before the court at that time was rather interrelated and took place about the same time and while the witness Albert Green was being interrogated, we shall consider the two statements together, in determining whether or not the trial judge commented upon the facts, even though his objection to the first statement made by the court was not predicated upon the ground that the judge had commented upon the facts of the case! This view of the situation, of course, is favorable to the defendant, because technically, he may not be entitled to such consideration.
 

 What did the judge mean when he stated: “The accused was identified by the witness before the witness answered that question.” If he said, or intended to say that the witness Albert Green had previously identified the accused as the man whom the officer was attempting to eject from the dance hall when the witness had not made any such statement, then the remark by the court would be objectionable and prejudicial to the rights of the accused. The court did not say that Albert Green had previously identified the accused in connection with the altercation with the officer, because the record shows that before the witness could answer the question as to what the officer was doing at that time, counsel objected on the ground • that he could not testify to any act unless he first identified the accused as the party who was having the encounter with the officer. At that point, the district attorney stated: “How could we connect him, Your Honor, before the witness answers.” Im-; mediately following that observation, the court made the first statement, which is said to be a comment on the facts by the judge.
 

 A reading of the entire testimony quoted, which is all there is in the record on this issue, shows that the judge merely stated that the accused was identified by the witness who preceded the witness Albert Green on the stand and assigned that as the reason why the testimony of Albert Green, even though he could not identify the accused, was relevant and admissible, because the
 
 *417
 
 State had already connected the defendant with the disturbance and killing. The judge did not say that Albert Green had previously identified the accused as the man with whom the officer was having the difficulty, because the witness, due to' the objection of the defendant’s attorney, did not have an opportunity to say whether or not he could identify the accused. Subsequently, in his testimony, he unequivocally stated that he could not identify the defendant, who was in the court room, as the man with whom the officer had the trouble. The above-quoted statement of the district attorney, the presiding judge’s statement, and the fact that later on the witness, Albert Green, stated he was unable to identify the accused, as well as the further fact that at the time that the judge made the statement defense counsel did not object that the court was making a misstatement of the facts or commenting on the facts or testimony in the case, show that the judge was simply assigning his reason for overruling the defendant’s objection that the witness could not testify until he had first identified the accused. The best that can be said for the defendant’s argument is that if the.sentence in question is considered separate and apart from the rest of the stenographic record, either the judge in making the statement assigning his reasons for overruling the objection did not make himself clear, or the stenographer inadvertently transcribed his notes, so as to make the judge’s statement appear uncertain. However, when the quoted transcript is considered with the defendant’s objection at that time, it is clear that the judge did not say or intend to say that Albert Green had previously identified the accused as the party with whom the officer was having the trouble in the dance hall. If counsel’s reasons for his present complaint had been assigned at the time he made the objection and reserved the bill, the trial judge, in his reasons for overruling the objection and in his per curiam, would have been afforded an opportunity tO' show that the position then taken by the defendant was incorrect. It is only by isolating the judge’s statement in question and disregarding all of the other statements made by the witness, the defendant counsel, and the district attorney that one could arrive at the conclusion that the judge stated that Albert Green had previously identified the accused. This we will not do.
 

 In the case of State v. Childers, 196 La. 554, 564, 199 So. 640, 643, where the accused sought a reversal of the verdict and the sentence on the ground that the judge had commented on the facts in making his. ruling that the foundation had
 
 been
 
 properly laid to introduce secondary evidence, the judge, in his per curiam, stated:
 

 “ ‘No reversible error was committed by the Court for the reason that it was not a comment on the facts, but was the basis of the Court’s overruling the objection made as to secondary evidence. The ruling as-made did not convey to the jury any impression of the trial Court’s opinion as to the guilt of either defendant. * * *
 

 “ ‘It is not improper for the Court to make remarks in the presence of the jury, giving its reasons for admitting or excluding evidence, or to state the purpose for which the evidence is offered or admitted, etc.’ 16 C.J. 832 — Criminal Law Sec. 2101.”
 

 
 *419
 
 In State v. Dreher, 166 La. 924, at page 967, 118 So. 85, at page 101, in connection with Bill No. 36, the foundation for the introduction of one of the accused’s' statements was being made by the State and an objection was made by the defendants. In overruling the objection, the district judge, in the presence of the jury, stated: “This alleged confession or statement is not signed.” Thereupon, defendants’ attorney further objected that this was a comment on the facts of the case by the judge. In holding that the bill of exception was not well-founded, this Court said: “The remark of the judge was not a comment on the facts. The statement made by him was purely irrelevant, as it was immaterial whether the confession of defendant was signed or unsigned, and did not convey to the jury any impression whatever of the trial judge as to the guilt of either of the defendants.”
 

 With reference to the second statement of the judge that if the witness answered as he (the judge) anticipated and as he (the witness) answered before the court reporter was called in that “the officer was attempting to put a.man out of the dance hall,” the statement was not a comment upon the facts of the case but was merely a remark made by the judge in assigning his reason for overruling the objection. It appears that when Albert Green was first placed on the witness stand, the stenographer was not present, but after the district attorney asked him a few questions, the defendant’s attorney objected on the ground that the witness could not testify as to what transpired in the dance hall between the officer and the man whom he was seeking to eject, without the witness first identifying the accused. Thereupon, the stenographer was called into the court room and the testimony- was taken down. The judge took particular care in stating that the jury would draw its conclusion from the testimony given by the witness as to whether or not the accused was the party with whom the officer was having trouble in ejecting from the dance hall. No inference could be drawn from the judge’s statement of his reasons for the ruling as expressing or implying an opinion either as to the guilt or innocence of the accused or his views with reference to whether the testimony was to be accepted or not because he specially stated that the jury was to draw its own conclusion from the testimony.
 

 It is our opinion that the statements made by the trial judge were not comments upon the facts of the case prejudicial to the accused but were merely assignments of the reasons for overruling the objections.
 

 Bill of exception No. 3 was reserved to the ruling of the trial judge in overruling the defendant’s objection that the State witness Albert Green should not be permitted to'testify as to what happened between the police officer and the man whom he sought to eject from the dance hall .until the witness identified the man as the defendant. In overruling the objection, the district judge stated: “The objection is overruled again and I again state the jury will draw its conclusion as to whether the accused was the man in question.”
 

 In his per curiam, the trial judge said r “The evidence was clearly admissible. The witness was testifying to facts which he
 
 *421
 
 saw and to an encounter which occurred before his eyes. It was the jury’s province to determine from all of the evidence in the case whether ‘the man’ referred to by the witness was the defendant.”
 

 The State had already identified the accused as the man with whom the police officer was having the difficulty by the testimony of the witness who testified before Albert Green was permitted to testify and, therefore, connected the defendant with the trouble which resulted in the shooting and the death of the police officer. The objection clearly went only to the effect of the evidence and not to its admissibility.
 

 Bill of exception No. 4 was reserved when the State witness Milton Robinson was testifying, the District Attorney having asked him, “When you went upstairs, state what you saw?” He answered: “As I went upstairs, I was nearly to the top, I saw a colored fellow with a two-toned jacket on; he shot the last bullet; his back was turned to me, he was standing in the door.” Defense counsel objected to this testimony on the ground that “the witness has not identified the defendant in this case as being the colored fellow, or man, that he states he saw shoot at that time.”
 

 As already stated in connection with bills of exception Nos. 1 and 3,, the State had, by the testimony of witnesses and the statements of the defendant, previously connected the defendant with the trouble that occurred in the dance hall resulting in the pólice officer’s death and, therefore, the objection went to the weight of the evidence and not to its admissibility.
 

 Bill of exception No. 5 was submitted •without argument by the defendant’s attorney. It was reserved by the defendant when the testimony of the defense character witness S. R. McConthy was taken. After the witness stated that he had known the defendant for about ten years and resided in the same community, De R'idder, Beauregard Parish, Louisiana, where the accused also -lived, the defense attorney asked the question, “Do you know his reputation for truth and veracity as a law abiding citizen of DeRidder, Beauregard Parish, Louisiana, where he lived ? ” After answering “Yes” to the question, he was also asked, “Is that reputation good or bad? ” The district attorney asked the court to permit him to cross-examine the witness to see if he was qualified to testify to the reputation of the accused. The witness, in answer to a series of questions, finally stated that he had never heard the character or reputation of defendant discussed prior to the time of the killing on November 14, 1941. Thereupon, the district attorney objected to the witness testifying as to the accused’s reputation on the ground that he was not qualified to do so. The court sustained the objection and the defendant’s attorney reserved a bill. However, defense counsel persisted in his questioning, as reflected by the stenographic transcript, as follows:
 

 “Q. Mr. McConthy, have you ever heard anything derogatory to the reputation of this defendant with reference to his being a law-abiding man? A. No, sir.
 

 “Mr. Mabry: I will change that to a law-abiding citizen — had you ever at any time before or after the killing heard anything
 
 *423
 
 ■derogatory to this boy’s reputation as a law-abiding citizen in the community where he lives ? A. I had no right to hear anything, I just know the boy’s reputation. I just know how he has always been a good boy around me; that is all I could say.
 

 “Q. You knew his reputation as being a good boy? A. Yes, sir.”
 

 The witness had previously stated, in response to this question from the judge, as follows:
 

 “Q. In other words, the discussion was provoked by the killing and the fact he was in trouble. A. I always knew that the negro was a good boy. He caddied for me on the golf course.”
 

 In Corpus Juris, yol. 30, § 392, page 172, we find:
 
 “A
 
 witness should be confined to evidence as to what he knew of defendant’s character before the difficulty and he should not be allowed to testify as to what he heard after that time.”
 

 The ruling of the court was correct that the witness could not give testimony as to the defendant’s character or reputation based upon discussions in the community as to the accused’s character or reputation, which took place subsequent to the killing. In his questions, the defendant counsel made no effort to confine the witness’ testimony to the accused’s general reputation or character prior to the time of the killing nor to establish good reputation and character by negative evidence, that is, that the defendant’s reputation and character had never been called in question before and, therefore, it was good. Furthermore, we have quoted from the testimony showing that the witness stated that the boy had a good reputation and, therefore, the evidence of good character or reputation was placed before the jury. This was all the defendant sought to accomplish by putting this witness on the stand.
 

 There'is nothing in the record to indicate in the slightest that the defendant or his attorney was’ discouraged by the correct ruling of the trial court that discussions provoked by the killing were inadmissible in evidence to show general reputation or good character and because of that ruling desisted from offering further witnesses to testify as to the defendant’s good reputation or character.
 

 Bill of exception No. 6 was submitted without comment by defense counsel. It was reserved to the trial judge’s refusal to give the special charge requested by the defendant as follows: “While it is true that crimes are committed without any apparent motive and while proof of motive is never essential to conviction where a crime has been proven, still the absence of motive to commit crime is a circumstance favorable to the accused.”
 

 In his per curiam, the trial judge stated:
 

 “The Court refused the special charge requested for the reason that it had no application to the case on trial. The killing in this case occurred during a physical encounter between the accused and the deceased as set forth in the per curiam to Bill of Exception No. 1.
 

 “It was not a circumstantial evidence case, but a case established by the direct
 
 *425
 
 evidence of eye witnesses and by the admission of the accused himself.
 

 i'Moreover, in the general charge to the jury the Court instructed the Jury fully on the question of malice necessary to constitute murder.”
 

 In his general charge to the jury, the trial judge stated:
 

 “Murder is the felonious killing of a human being with malice aforethought.
 

 “Feloniously means wilfully, unlawfully, with a criminal intent or purpose.
 

 “Malice aforethought not only means spite or malevolence to the deceased in particular, but any evil design in general, the dictate of a wicked, depraved and malignant heart.
 

 “Malice relates to the condition of the prisoner’s mind at the time of the killing, and signifies such a depraved condition of mind as shows a total disregard of social duty, and a heart .bent on evil.
 

 “Malice being a mental condition, cannot be the subject of direct testimony, but must be inferred from all the facts and circumstances of the case.
 

 “The word ‘aforethought’ does not mean that the malice requisite to murder should have existed for minutes, hours or days before the shooting; but it suffices if the malicious intent to kill or to do other great bodily harm is executed the instant it springs into the mind.
 

 “Malice may be either express or implied.
 

 “Express malice is shown when one with a deliberate mind and formed design kills another; which design is evidenced by external circumstances such as lying in wait, prior threats, former grudges, and concerted schemes to do bodily harm.
 

 “In many cases where there is no proof of express malice, it may be implied from the nature of the act or the surrounding circumstances of the case.
 

 “However, malice is not to be presumed from the mere act of shooting, but must be proved, or the circumstances of the shooting shown from which it can be inferred as a fact in the case. Intentional use of a deadly weapon without legal excuse ordinarily justifies an inference of murder, if the killing be unaccompanied by circumstances of extenuation.
 

 “Ordinarily, when the act is done deliberately, without just excuse or extenuating circumstances, and with a deadly weapon, and is likely to be attended with dangerous consequences, and homicide results therefrom the malice requisite to murder may be presumed.
 

 “Therefore, if you find from the evidence, beyond a reasonable doubt, that the killing in this case was accompanied with the malice aforethought as defined to you, it is your duty to convict as charged.
 

 “If the killing was done without malice aforethought though not in self-defense, ordinarily, it is manslaughter.”
 

 In State v. Johnson, 139 La. 829, 830,
 
 72
 
 So. 370, 371, the defendant requested a similar special charge to the one in question and the trial court refused to give it, whereupon, the defendant reserved the bill. In uphold
 
 *427
 
 ing the ruling of the trial judge, this court stated:
 

 “ ‘Motive,’ in one sense, is that something in the mind, or that condition of the mind, which incites to the action. A thing which is thus hidden in the mind of the accused, or, in other words, this condition of the mind of the accused, can, in the nature of things, be known only to the accused. But an inference as to th'e existence of such a thing in the mind, or of that condition of the mind, may be drawn from some external fact such as would be of a nature to produce or bring about that something in, or condition of, the mind; and it is therefore to such an external fact as this that reference is had in this charge No. 1 when the word ‘motive’ is used. The meaning is that failure on the part of the prosecution to prove any fact calculated to have produced this condition of mind in the accused is a strong circumstance in favor of the accused. This, as the learned trial judge very properly said, is not good law. The law is that the prosecution may stop with proof that the crime was committed, and not concern itself with making any proof of motive, or, in other words, of any fact calculated to have incited the accused to the commission of the crime. * * *
 

 “If, however, the accused, not content with relying simply upon the failure of the state to prove some fact from which this mental condition might be inferred, had gone further and proved facts from which the absence of such a mental condition might be inferred, then a charge that (to use the expression of this charge No. 1) the absence of motive was ‘a circumstance in favor of the accused’ would have been not only proper but necessary to be given. * * * But the bill of exception fails to show that affirmative proof was made of facts from which' an absence of motive might be inferred. Hence, for all that appears, the rejection of the charge was entirely proper.”
 

 In the instant case there is nothing in the record or the bill of exception to show that the defendant offered affirmative proof of facts from which an absence of motive might be inferred.
 

 In Corpus Juris, vol. 30, Homicide, § 602, page 349, we find: “Where, however, the offense is admitted or clearly established, the court may charge that it is not necessary to prove a motive, and may refuse a request to instruct to the contrary. Where the intent which moved defendant to the killing has been shown, it is not material that the jury be instructed as to the motive.”
 

 Furthermore, the special charge requested was substantially included in the general charge on the subject of malice hereinabove quoted.
 

 Bill of exception No. 7 was reserved when the court failed to observe that the accused was handcuffed at the time that the sentence was imposed upon him. The record clearly shows that upon the court’s attention being called to this fact, the accused was brought before the bar the second time and resentenced after the handcuffs had been removed. The oversight was harmless because the jury had found the defendant guilty without qualifying its verdict and, therefore, it was mandatory that the judge impose the death sentence. Even if
 
 *429
 
 it be considered an error, the defendant was not prejudiced in any substantial right because, under the law, he would simply be entitled to have the sentence imposed properly and this would in no way affect the validity of the verdict. He has not asked the court to be resentenced.
 

 Bill of exception No. 8 was taken when the defendant’s motion for a new trial based upon the ground that the verdict of the jury was contrary to the law and evidence was overruled by the district judge. Under the established jurisprudence of this court, this bill of exception presents nothing for us to review.
 

 For the reasons assigned, the verdict of the jury and the sentence of the court are affirmed.
 

 O’NIELL, C. J., dissents.
 

 ODOM, J., dissents from the ruling on bills Nos. 1 and 2.