*165
 
 SUMMERS, Justice.
 

 Marvin Bueche was indicted for murder, tried, convicted of manslaughter and sentenced to imprisonment in the State penitentiary for twelve years.
 

 Defendant reserved nineteen bills of exceptions. He has appealed from his conviction and sentence, relying upon twelve of the bills of exceptions reserved.
 

 On the afternoon of April 1, 1961, at about 3:00 o’clock the accused made a date with the decedent, Louella Landry, to attend a dance that night. Later that afternoon he purchased a pistol at a store in the town of New Roads. At about 8:00 p. m. he called for decedent at her home, in or near the town of Morganza. They attended a dance at a place called Cedar Club which is near Morganza. The accused and the decedent left the dance together at about 12:30 a. m. They rode out in the accused’s car to the Morganza Spillway, above the town of Morganza in Pointe Coupee Parish, Louisiana, where the accused parked in a lane, removed the pistol he had purchased that afternoon from the glove compartment of his car, and, according to his version, accidently shot the decedent in the temple. The accused then removed some of the lower clothing and undergarments of the decedent for the alleged purpose of administering artificial respiration to the decedent who was then unconscious.
 

 The accused then took decedent to St. Joseph’s Hospital in New Roads where she died at approximately 3 :30 a. m., April 2, 1961. The shooting having been alleged to have occurred prior to 1:40 a. m. the same day.
 

 The accused was questioned: at the hospital at about 2:00 a. m. that morning, later at the crime laboratory in Baton Rouge, at the scene of the shooting near the Morganza Spillway, and at the sheriff’s office. Thereafter, at about 10:00 a. m. the accused was incarcerated. On these occasions he is alleged to have made admissions of certain inculpatory facts which are presently at issue. Also at issue is an admission alleged to have been made later, on April 6, in the parish jail.
 

 During the trial the State offered evidence, outside the presence of the jury, to lay the foundation for the alleged free and voluntary admissions made by the accused; and the defense offered evidence to show that said admissions, if made, were not made freely and voluntarily, and, after completion of all of this testimony, counsel for defendant objected to the offering in evidence of any alleged admission on the grounds that the State failed to prove beyond a reasonable doubt that the admissions were made freely and voluntarily by the accused.
 

 The court below ruled that all of the admissions were made freely and voluntarily
 
 *167
 
 by the accused, to which ruling counsel for defendant reserved formal Bills of Exceptions Nos. 2 and 3.
 

 The defendant relies upon the circumstances. surrounding the admissions made on each of the five different occasions to establish their involuntary character. It is contended that inasmuch as the evidence showed the accused was affected with a congenital heart condition, which though repaired in infancy still rendered him unable to withstand strenuous -exertion, he was in a weakened state, unable to withstand the prolonged questioning and stress attendant upon the investigation which was made from 2:00 a. m. to 10:00 a. m. on the date of the killing. This circumstance,however, is not to be accorded undue consideration when it is considered that the accused was permitted to lie down on a hospital operating table for about forty-five minutes immediately after his arrival there to recover his composure, and in order to permit recovery from the inevitable emotional upheaval resulting from what had transpired. Too, he was then examined by the parish ■ coroner and another medical doctor and found not to need any medical attention. He later voluntarily accompanied the officers to the crime laboratory in Baton Rouge. He was then given coffee and breakfast. Thereafter he went to the sheriffs office in New Roads, the Cedar Club and the Morganza Spillway. Although he exhibited some evidence of emotional disturbance at times during the morning, there was nothing to suggest such tiring or physical exhaustion as would deprive him of the will to engage in voluntary action.
 

 Another circumstance relied upon is that one of the sheriff’s deputies used threats or inducements to compel the admissions relied upon.
 

 Oil one occasion, in the presence of the accused’s father, Deputy Sheriff Becnel said to the accused, “Why don’t you admit, boy, that you attempted to rape the girl?” This same officer admitted that he told the accused “it would be better to tell the truth.” There were, however, no promises of leniency or threats accompanying this statement.
 

 The rule is established by numerous decisions of this court that admissions involving the existence of criminal intent or inculpatory facts are governed by the rules applicable to confessions. State v. Maney, 242 La. 223, 135 So.2d 473; State v. Domino, 234 La. 950, 102 So.2d 227; State v. Palmer, 232 La. 468, 94 So.2d 439; State v. Clark, 228 La. 899, 84 So.2d 452; State v. Robinson, 215 La. 974, 41 So.2d 848; State v. Crittenden, 214 La. 81, 36 So.2d 645; State v. Hayes, 162 La. 310, 110 So. 486.
 

 Article I, Sec. 11 of the LSA-Constitution of Louisiana provides in part, as follows :
 

 
 *169
 
 “No person under arrest shall be subjected to any treatment designed by effect on body or mind to compel confession of crime; nor shall any confession be used against any person accused of crime unless freely and voluntarily made.”
 

 Article 451 of the Code of Criminal .'Procedure, LSA-R.S. 15:451 provides:
 

 “Before what purposes (purports) to be a confession can be introduced in evidence, it must be affirmatively shown that it was free and voluntary, and not made under the influence of fear, duress, intimidation, menaces, threats, inducements or promises.”
 

 In State v. Robinson, 215 La. 974, 41 So. 2d 848, it was said on rehearing:
 

 “ * * * the admissibility of a confession in evidence is predicated upon the state’s establishing its free and voluntary character by proof that is direct and positive, and, under our jurisprudence, this fact must not only 'be established to the satisfaction of the trial judge out of the hearing of the jury but
 
 his ruling with respect . thereto will not be disturbed on appeal ■unless clearly not supported by the • evidence.”
 
 (Emphasis supplied.)
 

 Pertinent to this case is the court’s ■expression in State v. Ross, 212 La. 405, -31 So.2d 842, where it was said:
 

 “The jurisprudence is well settled that a confession will not be excluded because of mere exhortation or adjuration to speak the truth, but such exhortation or adjuration, accompanied by an expression that it would be better for the accused to tell the truth, has been the subject of many conflicting decisions throughout this country. To us the real question in such case is whether the language used in regard to speaking the truth, when taken in connection with the attendant circumstances and with other language spoken in the same or at some prior interview, shows that the confession was made under the influence of some threat or promise, for in such case the confession is inadmissible.”
 

 The accused took the stand in his own behalf upon the occasion of the introduction of the evidence as to the voluntary or involuntary character of the admissions. He affirmatively testified that he was not threatened or mistreated in any way in connection with the admissions which he made. His testimony indicates that he relied upon his shocked and weakened condition as being responsible for the involuntary nature of his admissions. This reliance, however, is amply rebutted by the testimony of the two doctors who found medical attention unnecessary. He testified, too, that he voluntarily accompanied the of
 
 *171
 
 ficers to the various places where the admissions were made.
 

 Furthermore, we understand the accused relies upon the alleged inducement made by Deputy Becnel when he said, “it would be better to tell the truth” or words to that effect.
 

 A proper test as to whether the admissions were voluntary or involuntary would be whether the inducement was of a nature calculated, under the circumstances, to induce an admission irrespective of its truth or falsity.
 

 Considering all of the circumstances surrounding the making of the admissions in question, and the jurisprudence which establishes the rule that the trial judge’s findings with respect to the voluntary or involuntary character of the admissions will not be disturbed on appeal unless clearly not supported by the evidences, we are convinced that no error was máde in holding the admissions to be admissible in evidence. Bills of Exceptions Nos. 2 and 3 are therefore without merit.
 

 In connection with Bill of Exceptions No. 4, it is shown that the accused took the witness stand and, referring to the decedent, Louella, testified as follows:
 

 “Q. Did you make the statement that you were extremely jealous of her?
 

 “A. No Sir, I never did.
 

 “Q. You never have made that . statement ?
 

 “A. No, sir, I never had.
 

 “Q. You didn’t tell that to Mr. Koch on the way back to Baton Rouge ?
 

 “A. No, sir, I never did.”
 

 By reading the testimony made available-in connection with the bills of exceptions, it readily appears that the time and date-the accused and Kosch (Koch) were together en route to Baton Rouge was the-early morning of April 2, 1961.
 

 Thereafter, Officer Kosch was called to-the witness stand on rebuttal and was,, questioned as follows:
 

 “Q. Mr. Kosch, will you state whether or not, in the early morning of April 2, 1961, while you and the accused were riding from New Roads-to Baton Rouge, Louisiana, he made a statement to you that he was jealous of Louella?”
 

 Counsel for the accused objected for the-reasons that: the question was leading; the proper foundation had not been laid to-ask the question on rebuttal; and it was irrelevant and immaterial, and should have-been presented in chief by the State. The-assistant district attorney stated to the-court below that the purpose of the question was for impeachment of the accused', who took the witness stand and denied!
 
 *173
 
 having made the statement to the witness, Mr. Kosch, at the time and place stated, further arguing that a sufficient foundation had been laid to impeach the witness, the accused, by a prior inconsistent statement.
 

 The objection was overruled.
 

 Counsel for defendant reserved a formal bill of exceptions.
 

 The witness answered: “Yes, he did.”
 

 It is quite obvious that the question propounded to Kosch is leading, but such '.a leading question is proper if propounded for the purpose of impeaching the credibility of an adverse witness, provided the proper foundation has been laid.
 

 The legal requirements concerning the requisite foundation for proof of a con-, tradictory statement are set forth in Art. 493 of the Code of Criminal Procedure, LSA-R.S. 15:493, viz.:
 

 “Whenever the credibility of a witness is to, be impeached by proof of any statement made by him contradictory to his testimony, he must first be asked whether he has made such statement, and his attention must be called to the time, place and circumstances, and to the person to. whom the alleged statement , was. made, in order that the witness may have an opportunity of explaining that which is prima facie contradictory. If the witness does not distinctly admit making such statement, evidence that he did make it is admissible.”
 

 There is no contention that the proper foundation has not been laid .as .to .time, place or circumstance. What is relied upon to substantiate the error complained of is the difference in the, two questions. The accused was . asked if he was “extremely jealous” of the ■ decedent, whereas, the question which was propounded to witness Kosch was whether the accused made the statement that he' was “jealous” of her. We are of. the opinion that this contention is without merit and rely upon the rule of law announced in School Board of Union Parish v. Trimble, 33 La.Ann. 1073, to support our view. In that case it was said:
 

 “The rule of law undoubtedly is, that a witness must be plainly informed with regard to such alleged previous" statement, so that there may be no .possibility of his mistaking the conflicting , statement referred to, and which he is charged with having made. It is' not sacramental that the exact time of the alleged statement should be designated, so that it appears that sufficient reference is made to the circumstances that attended the statement; arid to', the statement itself, its language and subr stance, as to apprise the witness clearly-of what is referred to, and place him fully on his guard.” See also, People
 
 *175
 
 v. Dachille, 14 A.D.2d 554, 218 N.Y.S. 2d 156 and cases cited therein.
 

 Though the statement referred to in questioning the accused and that referred to in questioning the witness, Kosch, differed in the one word “extremely”, we are nevertheless of the opinion that the circumstances referred to surrounding each statement with reference to the place “on the way back to Baton Rouge” and “riding from New Roads to Baton Rouge,” together with the time, April 2, 1961, and the person to whom they were made, “Mr. Koch”, substantially fulfilled all the requirements of the law; and the question and answer were proper upon the basis that they sought to impeach the credibility of the accused.
 

 For the foregoing reasons we find Bill of Exceptions No. 4 without merit.
 

 The same contentions were made in connection with Bill of Exceptions No. 5.
 

 The accused took the witness stand and testified as follows:
 

 “Q. Did you tell Mr. Koch on the way back from Baton Rouge that somebody else had told you that other people could get what they wanted out of Lou ella?
 

 “A. No, Sir.”
 

 Thereafter Officer Kosch was called to the witness stand on rebuttal and testified:
 

 “Q. Did he on that occasion or not state that he had been informed by one of his friends that he; the friend, could get anything he wanted from Louella ?”
 

 To which question counsel for the accused objected for the reasons that the-question was leading, was irrelevant and. immaterial, was not proper rebuttal testimony and if used for any other purpose than- impeachment it was not admissable..
 

 The objection was overruled.
 

 Counsel for defendant reserved a formal.’ bill of exceptions.
 

 The witness answered:
 

 “A. He made a statement to me to that effect. If those are the exact words or not, I do not know.”
 

 For the reasons assigned in our ruling' on Bill of Exceptions No. 4, we are of the-opinion that the question and answer which are the subject of Bill of Exceptions No.. 5 were proper to impeach the credibility of the accused who took the witness stand’ in his own behalf.
 

 Therefore, Bill of Exceptions No. 5 is-also without merit.
 

 In connection with Bill of Exceptions No. 6 the accused, relying upon LSA-R.S. 15:385 and 390, requested a special charge to the court to be given to the jury-which read as follows:
 

 
 *177
 
 “While it is true that crimes are • committed without any apparent motive and while proof of motive is never •essential to conviction where a crime 'has been proved, still the absence of ■motive to commit the crime is a substance favorable to the accused.”
 

 The court refused to give this special -charge to the jury and a bill of exceptions -was timely reserved.
 

 In its per curiam to the bill of exceptions ■the trial court informs us that it is its opinion the State does not have the burden of ■proving motive in a crime, and the failure to charge the jury as requested in no way ■resulted in prejudice to the accused as all ■of his rights were fully protected by the .•general instruction.
 

 Obviously the requested charge is derived from that employed in State v. Johnson, 139 La. 829, 72 So. 370. Yet, because of the rule announced in that case, the accused is in no position to complain. As we appreciate the holding in the Johnson case, the trial judge is not required to instruct the jury that lack of motive is a circumstance in favor of the accused unless the accused has proved facts from which the absence of a motive may be inferred. Furthermore, we understand that the Johnson case stands for the proposition that in ■order to raise the issue of failure to give ■such an instruction, the bill of exceptions must show that affirmative proof was made of facts from which an absence of motive might be inferred. This ruling was followed in State v. Iles, 201 La. 398, 9 So.2d 601. .
 

 The bill of exceptions under review fails to disclose any evidence which would tend to negative the presence of motive.
 

 The charge to the jury did contain instructions that the State had the burden of proving specific intent to kill or inflict great bodily harm upon the decedent. Under the circumstances, therefore, the necessity for the requested charge is obviated.
 

 The accused relies upon the cases of State v. Brown, 214 La. 18, 36 So.2d 624, and State v. Leonard, 230 La. 414, 88 So.2d 804, which we find inapplicable here inasmuch as they present factual situations not involving “motive” concerning which special rules apply.
 

 Bill of Exceptions No. 6 is without merit.
 

 In discussing Bills of Exceptions Number 13, 14, 15, 16, and 17, involving the failure of the trial judge to give requested special instructions,- it is essential to bear in mind the provisions of Article 390 of the Code of Criminal Procedure, LSA-R.S. 15 :390:
 

 “The prosecution and the defense have each the right to present to the court, before the argument has begun, any written charge or charges, and re
 
 *179
 
 .quest that the same be given. Except' as otherwise provided herein, the judge must give every such requested charge that is wholly correct and wholly pertinent, unless the matter contained in such charge have been already given, or unless such charge require qualification, limitation or explanation.”
 

 . These bills are directed at the refusal of the trial.judge to give the following requested special charges:
 

 ‘‘Bill of Exception Number 13:
 

 “The defense that the death was accidental necessarily denies that the' killing. was intentional. ■ This defense does not shift to the defendant the burden of proving that the homicide was caused by accident. On the contrary, where,the defense of apcidental killing is urged, the burden rests upon the State to show beyond a reasonable doubt that’the killing' was willful and intentional.
 

 “Bill of Exception Number 14:
 

 “The defense that the death was accidental necessarily denies that the killing was intentional. This defense does not shift to the defendant the burden of proving" that the homicide was caused by accident. On the contrary, where the' défénsá of accidental killing is urged, the burden rests upon the State to show beyond a' reasonable-' doubt that the killing willful'and in-' tentional or that the 'killing was do’ne while the accused was engaged in the attempted perpetration of aggravated rape.
 

 “Bill of Exception Number IS:
 

 “A killing by accident is excusable where it is accidentally committed while doing a lawful act and where the accused had no specific intent to kill or do great bodily harm, if this be the case the accused should be found not guilty.
 

 “Bill of Exception Number 16:
 

 “Homicide by mis-adventure is the-accidental killing of another where-the slayer is doing a lawful act unaccompanied by any criminal intent or conduct. Where a homicide is excusable the jury should find the accused, not guilty.”
 

 “Bill of Exception Number 17:
 

 “If you find that the pistol in this-case was fired accidentally and that Marvin Bueche had no specific criminal intent to do great bodily harm or to kill the decedent, Louella Landry,, it would be your duty to find the accused not guilty.”
 

 Some of these requested charges (such-as, for instance, the one involved in Bill No. 17) are not wholly correct and require qualification, limitation or explanation because they fail to- take into account
 
 *181
 
 that the accused can he guilty of murder ■ even without any intent to kill if the killing was done in the perpetration of attempted -aggravated rape.
 

 However, even assuming the correctness of the requested charges, the trial •court did not err in refusing to give them. 'The obvious purpose of counsel for the ac•cused in requesting these charges was to inform the jury that the burden was on the State to prove that the killing was not -■accidental; that specific intent to kill or to inflict great bodily harm must be shown (LSA-R.S. 14:30(1)), and that the accused was not required to prove accidental death -as a defense. Certainly that purpose was served by the following excerpt from the .general charge given by the trial judge:
 

 “I further charge you that the State must prove beyond a reasonable doubt each and every essential element of the crime charged in the indictment in this case, therefore, you must be satisfied beyond a reasonable doubt, that the decedent came to her death as the result of a homicide and not from any other cause such as
 
 accident,
 
 natural death or suicide; you must be satisfied beyond a reasonable doubt as to the identity of the decedent, that is, that the body found was that of Louella Marie Landry; you must be satisfied beyond a reasonable doubt that the accused, Marvin Bueche, killed the de.cedent, and finally, you must be satisfied beyond a reasonable doubt that the accused, Marvin Bueche, killed the decedent while engaged in an attempt to perpetrate aggravated rape upon her, or with the specific intent to kill or inflict great bodily harm upon her. (Emphasis Supplied.)”
 

 Furthermore, the trial judge charged the jury repeatedly in the general charge that the burden was upon the State to prove that the accused killed the deceased with the specific intent to kill or inflict great bodily harm. This alone would have been sufficient under our holding in State v. Goodwin, 189 La. 443, 179 So. 591. Á reading of that decision reveals that the defense had requested charges similar to those re-1quested here. The court held that the subject matter was covered in' the general charge relating to burden of proof. In' the instant case the court went even further; and specifically instructed the jury that the State bore the burden of proving that thé death resulted from homicide and “not from any cause such as accident, natural death or suicide.”
 

 Bills of Exceptions Nos. 13, 14, 15, 16 and 17 are without merit. .
 

 After trial but before sentence on May 30, 1961, the accused filed a motion to proceed in forma pauperis which the court granted. He then filed a motion to have the entire testimony taken at the trial! tran.scribed at the expense of. the .State and
 
 *183
 
 parish in order that the testimony might be attached to a motion for a new trial to be filed on behalf of the accused. That part of the motion for a new trial pertinent to this bill of exceptions alleged that there was a complete lack of evidence to support the proof essential to a valid conviction of manslaughter. The motion to have the testimony transcribed was denied, the court being of the opinion that no authority existed in our law to transcribe the testimony at the cost of the State. Bill of Exceptions No. 18 was reserved to the ruling.
 

 It is clear that this court is limited in the scope of its review in criminal matters by Article 7, Section 10, of the Constitution of this State to “questions of law alone.” The determination of the question of guilt or innocence under our law is within the sole province of the jury. Article 19, Section 9, Constitution of Louisiana.
 

 Nevertheless, this court has recognized and stated that a proper interpretation of the foregoing constitutional provisions permits a complaint that a conviction which is based upon no evidence at all presents the question of law of whether it be lawful to convict an accused without any proof whatsoever as to his guilt. Moreover, it is only when there is no evidence at all upon some essential element of the crime charged that the court may set aside a verdict. State v. Garner, 241 La. 275,. 128 So.2d 655.
 

 Relying upon this jurisprudential rule theaccused here seeks a review of the testimony and evidence to determine whether there • is proof to support the essential elements, of the crime of which he has been found-guilty.
 

 It is indisputable, too, that underour law the only means by which the testimony may be reviewed by this court is-to have it attached to a motion for a new trial, (LSA-R.S. 15:505, 516, 520) and a bill of exceptions must be reserved to thedcnial of the motion for a new trial. The-bill must have attached thereto the motion and evidence relied upon.
 

 And LSA-R.S. 15:500 provides that:
 

 “The bill of exceptions must show the-circumstances under which and the-evidence upon which the ruling complained of is based; and the accused is. without right to have taken down anyevidence except that which is necessary as a basis for his bill; he can not require that any evidence be taken down that appertains to guilt or innocence.”
 

 The legislature amended the above section by Act 13 of 1960 so as to delete-everything therein following the first semicolon. Thus it would seem that the prohibition against the taking of evidence concerning guilt or innocence was removed..
 
 *185
 
 Act 12 of 1960 added Section 332.2 of Title 15 of the LSA-Revised Statutes of 1950 which provided specifically for the transcribing of testimony in felony trials. Had these acts remained in effect there would be no problem before us here, for clearly under their authority the trial court ruling was erroneous. However, the legislature suspended these acts by House Concurrent Resolution No. 93 during the 1960 session of the legislature.
 

 It has been pointed out on behalf of the accused that reference to the House Journal discloses that the resolution suspending the effect of Acts 12 and 13 of 1960 was declared passed by the House of Representatives by a vote of 48 yeas; that this vote was three short of the majority of 101 elected members of the House of Representatives required for its adoption, Article 3, Section 24, Constitution of Louisiana. If this be so, it is argued, there was no valid suspension of Acts 12 and 13 of 1960. These acts, therefore, were in effect at the time of the trial and the ruling of the trial court was necessarily erroneous.
 

 Industrious counsel for the accused further contends that the failure to provide the indigent accused with the transcribed testimony to permit a review of his case upon appeal is a deprivation of his liberty without due process of law and this is so regardless of the validity or nonvalidity of Acts 12 and 13 of 1960 and this result must follow as the due process clause of the Federal Constitution as interpreted in Griffin v. Illinois, 351 U.S. 12, 76 S.Ct. 585, 100 L.Ed. 891, is the paramount law of the land and that decision requires that an indigent accused, under the circumstances of this case, be provided with a transcript of the testimony at the expense of the State.
 

 But we find it unnecessary to pursue these contentions inasmuch as the accused in his motion for a new trial did not allege what essential element or elements of the crime were not supported by proof. The motion being deficient in this respect even though the evidence were attached thereto it would not be subject to review by this court. The general allegation contained in that motion 1‘that there was a complete lack of evidence to support the proof essential to a valid conviction of manslaughter” without pointing out wherein the proof was wanting presents nothing for review by this court. LSA-R.S. 15:507. See State v. Wheeler, 173 La. 753, 138 So. 656; State v. Roberson, 159 La. 562, 105 So. 621; State v. Robertson, 133 La. 806, 63 So. 363; State v. Henderson, 113 La. 232, 36 So. 950.
 

 Accordingly we hold that the denial of the motion to have the entire evidence transcribed was proper and Bill of Exceptions No. 18 is without merit.
 

 Bill of Exceptions No. 19 is reserved to the failure of the trial court to grant a new trial. The errors specified as the basis for
 
 *187
 
 the new trial have been disposed of by us in our rulings on the bills of exceptions above. Our previously assigned reasons are the basis for our finding that this bill is without merit.
 

 In addition to the bills of exceptions counsel for accused urges that attempted murder and attempted manslaughter are responsive verdicts in a trial for murder. It is asserted that in failing to instruct the jury respecting these alleged responsive verdicts the trial court committed error even though the court admittedly instructed the jury in strict accordance with the responsive verdicts listed in LSA-R.S. 15:386.
 

 Although no bill of exceptions was reserved to preserve this objection, it is argued that the charge was made in writing and is part of the record and, since the charge is part of the record, the asserted error in the charge is an error patent upon the face of the record and it was not necessary to reserve a bill of exceptions to obtain appellate review of such an error. Reliance is had upon LSA-R.S. 15 :503, 558 and 560 to support this view.
 

 The admission that no bill was réserved to serve as a foundation for the presentation of this issue on appeal convinces us that the matter cannot be considered. Article 391 of the Code of Criminal Procedure, LSA-R.S. 15:391, specifically provides that every objection to the charge given shall be by means of a bill of exceptions reserved before the jury shall have retired to deliberate upon the verdict. Not having complied with this provision of our positive law, accused cannot obtain appellate review of the complaint that the desired instructions were omitted from the charge. His failure to reserve the bill constitutes a waiver. State v. Miller, 237 La. 266, 111 So. 108.
 

 Nor can it be successfully contended that the alleged error is patent on the face of the record and may therefore be considered without the necessity of a bill of exceptions. This court has held in State v. Bickham, 236 La. 244, 107 So. 458, that the general charge is not a part of the record even though it is in writing and filed therein.
 

 The conviction and sentence are affirmed.