352 So.2d 678 (1977)
STATE of Louisiana, Appellee,
v.
Anthony J. MART, Jr., Appellant.
No. 59822.
Supreme Court of Louisiana.
November 14, 1977.
Rehearing Denied December 14, 1977.
*679 F. Irvin Dymond, William L. Crull, III, Dymond & Crull, New Orleans, for defendant-appellant.
William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., Harry F. Connick, Dist. Atty., Brian G. Meissner, Asst. Dist. Atty., for plaintiff-appellee.
TATE, Justice.
The defendant Mart was convicted of second degree murder, La.R.S. 14:30.1 (1975), and sentenced to life imprisonment. Upon his appeal, he relies upon nine assignments of error.
We find reversible merit in the assignments relating to the trial court's failure to afford him special instructions requested by him as to the defense of intoxication (Assignments 12, 15). By reason of the trial court's failure to give these special written charges requested by the defendant, which were appropriate under the facts in evidence, the trial jury did not receive instructions from the court as to the law applicable by which it could properly have considered the accused's principal defense to the offense charged.
*680 Facts
The state's evidence shows:
The accused Mart and state witness Jones met in a barroom about 9:30 p. m. to 10:00 p. m. one night. They drank beer together until approximately 2:00 a. m. Jones testified that he himself drank between 20 and 25 beers. (When defendant Mart took the stand in his own defense, he testified that he himself had drunk between 15 and 20 beers.) Jones and Mart were both nineteen years of age at the time.
The accused then requested Jones to drive him to his (the accused's) brother-inlaw's house in Metairie. He was angry at his brother-in-law, whom he stated was causing trouble to the accused's sister, from whom he had separated.
Before going to the brother-in-law's house, the accused Mart went by his parent's home to get a 20-gauge shotgun. Jones and Mart then went to the brotherin-law's house, where the defendant shot and shattered the front living room picture window.
On their return from Metairie, they drove past two young men of a race different than their own. Jones stated that the defendant requested him to "turn around, I am going to shoot over their heads and scare them." Jones turned, the defendant loaded the shotgun, and sat in the window of the car, and then fired across the top of the two young men, who jumped out of the way.
Jones testified that, as they sped off, he and Mart were "laughing and talking how they were running out of the way." However, next day, the two learned that the birdshot had struck one of the young men, the decedent Dunn, who died as a result.
Mart's testimony essentially confirmed this account. He further stated that the reason he desired to shoot near (but not at) the two young men to scare them was that one of them had made an obscene gesture with his hand as they went by the first time. (Jones did not so testify.)
The Accused's Defense
The accused's defense does not deny this senseless shooting and senseless death. The substance of the defense, rather, is that, whatever criminal offense Mart may have been guilty of, he nevertheless lacked the "specific intent to kill or to inflict great bodily harm" required under the facts to convict him of the crime charged, second degree murder, La.R.S. 14:30.1 (1975).[1]
In support of the defense of lack of specific intent, he requested special charges as to intoxication precluding the presence of the specific criminal intent required for the offense charged, La.R.S. 14:15 (1950). (For instance, if no specific criminal intent to kill was found, the jury might have returned the responsive verdict of guilty of manslaughter, La.C.Cr.P. Art. 814A(2), a less serious crime.)
La.R.S. 14:15 provides:
"The fact of an intoxicated or drugged condition of the offender at the time of the commission of the crime is immaterial, except as follows:
"(1) Where the production of the intoxicated or drugged condition has been involuntary, and the circumstances indicate this condition is the direct cause of the commission of the crime, the offender is exempt from criminal responsibility.
"(2) Where the circumstances indicate that an intoxicated or drugged condition has precluded the presence of a specific criminal intent or of special knowledge required in a particular crime, this fact *681 constitutes a defense to a prosecution for that crime." (Italics ours.)
Intoxication-defense Charges
The trial court refused the special charges as to intoxication. It ruled: "* * there is no evidence before the court of intoxication. There is evidence of drinking. No one has attempted to prove the defendant was intoxicated."
Under the facts here presented, the trial court was in error in refusing to give these special charges requested. Under similar circumstanceswhere in a murder prosecution there was evidence that the defendants "had been drinking" and "also" that they "were in some degree of intoxication", this court reversed the convictions for the trial court's failure to charge that partial or total intoxication might be taken into consideration by the jury in determining whether the defendants had the specific intent required for guilt of the crime charged. State v. Youngblood, 235 La. 1087, 106 So.2d 689, 690-91 (1958).
As we there stated, "the judge is required to cover every phase of the case supported by evidence whether or not accepted by him as true." 106 So.2d 691. We further observed: "The question of whether the circumstances in the instant case indicated that appellants were in such an intoxicated condition as to preclude the presence of the specific criminal intent to inflict great bodily harm was a question of fact for the jury; and if the jury found that they were, this constituted a defense to a prosecution for the crime charged." 106 So.2d 691. See also State v. Lentz, 306 So.2d 683 (La.1975).
In the present record, the evidence of the extensive pre-crime drinking, coupled with the bizarre behavior before and at the time of the crime, constituted appreciable evidence from which the jury might draw the inference that the accused was intoxicated. It was for the jury, not the judge, to determine what effect, if any, this intoxication had upon the presence or absence of the specific intent to kill or inflict great bodily harm required for guilt of second degree murder (and not required for the responsive lesser verdict of manslaughter).
The effect of the denial of the special written charges was to deprive the accused of jury instructions and consideration of his principal defense that he lacked the requisite specific intent required for a conviction of second degree murder, as charged. Therefore, we must reverse the conviction and remand for a new trial.
Other Assignments
We note several other errors in the denial of special charges or modifications of the general charge requested by the accused. In view of the reversal required by the assignments previously discussed, it is unnecessary for us to determine whether any of these assignments by itself or in cumulation might also require reversal. Nevertheless, to avoid the occasion of error on the remand for a new trial, we note that, under the facts and in the context of the present general charge, the defendant was entitled to the requested special charges or modifications of the general charge, as represented by the following assignments:
Assignment 13 (special charge 3) (the negligent homicide charge), see State v. Devenow, 253 La. 796, 220 So.2d 78, 83 (syllabus 10) (1969);
Assignment 14 (special charge 4) (the charge about a party vouching for the veracity of its witnesses);
Assignment 16 (objection to general charge on motive: "The law considers that no man does any act without a motive for doing it . . . it is not necessary to establish a motive to warrant a conviction"). Once a charge concerning motive was given, the charge was incomplete, since affirmative evidence disclosed lack of motive: Under such circumstances, as defendant requested, the jury should be instructed that a lack of motive may properly be considered as a circumstance mitigating against specific intent. State v. Bueche, 243 La. 160, 142 So.2d 381 (1962); State v. Iles, 201 La. 308, 9 So.2d 601 (1942); cf., State v. Johnson, 324 So.2d 349 (La.1975);
*682 Assignment 18 (objection to general charge on a presumption: "If, for instance, a man armed with a deadly weapon should suddenly, with little or no apparent cause or provocation, kill another, the law would presume that such a killing was deliberate and intentional and done for the purpose of killing or inflicting great bodily harm"). Having emphasized the presumption, the trial court should also have instructed the jury, as requested by the defendant, that this presumption may nevertheless be overcome by rebutting evidence. La.R.S. 15:432.

Decree
For the reasons assigned, we reverse the conviction and sentence, and we remand this case to the district court for a new trial in accordance with law.
REVERSED AND REMANDED.
SANDERS, C. J., dissents.
SUMMERS, J., dissents.
DENNIS, J., concurs in the principal holding of the majority opinion.
NOTES
[1] As re-enacted by Act 380 of 1975 and applicable to the conduct at the time of the offense, the crime charged is defined as follows:

"Second degree murder is the killing of a human being:
"(1) When the offender has a specific intent to kill or to inflict great bodily harm; or
"(2) When the offender is engaged in the perpetration or attempted perpetration of aggravated arson, aggravated burglary, aggravated kidnapping, aggravated escape, armed robbery, or simple robbery, even though he has no intent to kill.
"Whoever commits the crime of second degree murder shall be imprisoned at hard labor for life and shall not be eligible for parole, probation, or suspension of sentence for a period of forty years."