487 So.2d 709 (1986)
STATE of Louisiana
v.
Charles E. DEAN, Jr.
No. 85-KA-697.
Court of Appeal of Louisiana, Fifth Circuit.
April 14, 1986.
Rehearing Denied May 16, 1986.
*710 John M. Mamoulides, Dist. Atty., Dorothy Pendergast, Gerald Alonzo, Asst. Dist. Attys., Office of the Dist. Atty., Gretna, for plaintiff-appellee.
F. Irvin Dymond, New Orleans, for defendant-appellant.
Before CHEHARDY, DUFRESNE and WICKER, JJ.
DUFRESNE, Judge.
The defendant was indicted for two counts of First Degree Murder, La.R.S. 14:30. He entered a plea of not guilty and not guilty by reason of insanity. A sanity commission was appointed which examined the defendant and reported their findings at a sanity hearing. The trial judge determined that the defendant had the mental capacity to stand trial.
Prior to trial, count two was severed by the State and the defendant proceeded to trial by jury. He was found guilty as charged and the jury recommended a sentence of life imprisonment without benefit of probation, parole or suspension of sentence. The trial court sentenced the defendant in accordance with the jury's recommendation. Defendant appeals this conviction on the basis of eleven assignments of error. We affirm.

FACTS
On July 11, 1984, in the early morning hours the defendant, Charles Dean, after loading his car with various guns from his gun collection, ammunition, some cocaine and clothes; drove to his mother's house in Metairie. He entered the house and shot his mother and sister at close range, killing them both. He left the house, drove away and a few hours later crashed into a brick fence and house in the New Orleans area. He was restrained by State Troopers who arrived on the scene and after being advised of his rights, volunteered that "... a couple of hours ago I murdered my mother and sister." Jefferson Parish officers were dispatched to the home of Dean's mother and sister. There the officers found his mother's body with a single bullet wound to the head and the sister with a single bullet wound to the top of the head. *711 On the kitchen table the officers found numerous clear plastic baggies filled with cocaine and two plastic funnels with cocaine residue on them. Also, other evidence of cocaine ingestion and bagging was strewn about the house.
At trial Dean again confessed to the shooting death of his mother and sister. He admitted that he both, used and sold cocaine and that he had ingested cocaine prior to the shootings. His sole defense for his not guilty plea was that he was suffering from cocaine intoxication which negated the specific intent to commit the murders which is a necessary element for a first degree murder conviction. The defense of insanity was based solely on the defendant's intoxication from cocaine which he claimed induced a psychosis, rendering him unable to discern between right and wrong at the time of this act.

ASSIGNMENTS OF ERROR NOS. 1, 2, and 11
The defendant in these assignments of error addresses the complaint that the trial judge erred by refusing to give three special charges submitted by defense counsel. (Charge 1: Negation of specific intent by evidence of intoxication; Charge 2: The effect of voluntary intoxication on insanity defense;[1] Charge 7: Lack of motive.)
A requested special charge shall be given by the court if it does not require qualification, limitation or explanation and if it is wholly correct and pertinent. It need not be given if it is included in the general charge or in another special charge to be given. La.C.Cr.P. art. 807; State v. Smith, 414 So.2d 1237 (La.1982); State v. Jackson, 450 So.2d 621 (La.1984); State v. Guillot, 470 So.2d 360 (La.App. 5th Cir.1985); State v. Butler, 462 So.2d 1280 (La.App. 5th Cir. 1985). Failure to give a requested charge constitutes reversible error only when there is a miscarriage of justice, prejudice to the substantial rights of the accused, or a substantial violation of a constitutional or statutory right, State v. Marse, 365 So.2d 1319 (La.1978); La.C.Cr.P. art. 921.
The mandatory language of La.C.Cr.P. art. 802, states that the "court shall charge the jury ... as to the law applicable to the case", and in the comments it would appear that a jury charge of the law applicable to an intoxication defense is a mandatory charge.
The record testimony shows that the defendant Dean does not deny the shooting death of his mother and sister, however he pled not guilty and not guilty by reason of insanity. With regard to his not guilty plea, the substance of the defense is that whatever criminal offense he may have been guilty of, nevertheless because of intoxication he could not form the requisite "specific intent to kill or to inflict great bodily harm" required under the facts to convict him of the crime charged, first degree murder, La.R.S. 14:30.
In support of the defense of lack of specific intent, the defendant requested Special Charge No. 1 which included the defense of intoxication that precludes the presence of specific criminal intent required of the offense charged, La.R.S. 14:15.
La.R.S. 14:15 provides:
Section 15. Intoxication
The fact of intoxication or drugged condition of the offender at the time of the commission of the crime is immaterial, except as follows:
(1) Where the production of the intoxicated or drugged condition has been involuntary, and the circumstances indicate this condition is the direct cause of the commission of the crime, the offender is exempt from criminal responsibility.
(2) Where the circumstances indicate that an intoxicated or drugged condition has precluded the presence of a specific criminal intent or of special knowledge required in a particular crime, this fact constitutes a defense to a prosecution for that crime.
The trial court failed to read this special charge or otherwise give applicable law relative to the intoxication defense. No *712 reasons were given for its exclusion. Nor is his refusal to give the special charge made part of the record. However, because the trial court's general charge did include all but the intoxication defense of the defendant's special requested charge number one, the issue here is whether the failure to also have included the intoxication defense is reversible error under the facts of this case. (See La.C.Cr.P. art. 807)
The defendant is entitled to an instruction on voluntary intoxication if there is evidence from which the jury might draw the inference that the defendant was intoxicated (or drugged) at the time of the commission of the offense, State v. Mart, 352 So.2d 678 (La.1977); State v. Lentz, 306 So.2d 683 (La.1975); State v. Youngblood, 235 La. 1087, 106 So.2d 689 (La.1958).
A review of the record reveals evidence from which the jury might draw the inference that the defendant had been ingesting cocaine and was in some degree of intoxication at the time of the commission of the offense.
The officers investigating the scene of the crime found numerous clear plastic baggies containing a white powdery substance which later tested positive for cocaine. The baggies were in plain view strewn about the house together with other cocaine ingestion and bagging paraphernalia, including two plastic funnels also with cocaine residue on them. More cocaine was found at the defendant's apartment. Arresting officers described defendant when initially encountered as "wild", his body "twitching". The defendant claimed in testimony at trial that the cocaine belonged to him. He admitted also to selling cocaine. Defendant testified that during the hours before the crimes he had ingested just short of one ounce of cocaine, and that he had gone to his mother's home in a "panic" and thinking he had to move back home. Although he remembered shooting his mother and sister, he could recall no motive for doing so and could recall very few details of events surrounding the crimes. At the time of the crimes, the next door neighbor observed defendant as he entered and then left his mother's house. This neighbor described Dean when he first entered the house to be "in such a hurry and ... [like] something was wrong." Friends and relatives testified that defendant was a non-violent man, and that he was very close to his mother and sister. They each testified that it was unbelievable that Dean could have killed his mother and sister without having been out of his mind. State prosecutors presented expert testimony of a physical examination and blood test performed at Charity Hospital only some three hours after the murders which failed to support Dean's testimony that he had ingested cocaine; however, defense experts (including one state expert) testified that such evidence was inconclusive. These experts testified that cocaine will show up in a urinalysis but not a blood test, and that evidence of recent ingestion of the drug would not necessarily show up in physical examination.
The "... court shall charge the jury ... as to the law applicable to the case ..." (La.C.Cr.P. art. 802), which according to jurisprudential interpretation means the judge "is required to cover every phase of the case supported by the evidence whether or not accepted by him as true", State v. Youngblood, supra; State v. Mart, supra; State v. Butler, supra. This duty extends to any theory of defense which jurors could reasonably infer from evidence, State v. Welcome, 458 So.2d 1235 (La.1983); State v. Guillot, supra.
In the present record, the evidence appears to show that defendant had ingested cocaine and also that he was in some degree intoxicated at the time of the murders. Accordingly, under the facts here presented, the trial court erred when he refused to inform the jury of the intoxication defense.
Nevertheless, despite the possible error of the failure of the trial court to charge the jury with either the defendant's special charge Number One or the intoxication defense, we find this error to be harmless when viewing the entire record of this case, La.C.Cr.P. art. 921.
*713 The jury was instructed with the definition of specific intent; that the crimes of first degree murder, second degree murder, and manslaughter were specific intent crimes; and that in order to convict defendant of one of these crimes, the State must prove a specific intent beyond a reasonable doubt.
Accordingly, from the record it would appear that the jurors were convinced beyond a reasonable doubt that the homicide was committed with specific intent otherwise there would have been a verdict of not guilty.
As to the defendant's Special Charge No. 2, which was requested since he contends that he did not know the difference between right and wrong at the time of the crimes because he was a victim of cocaine induced psychosis.
Insanity is a defense to any crime when the circumstances indicate "that because of a mental disease or mental defect, the offender was incapable of distinguishing between right and wrong" with reference to the conduct in question. La.R.S. 14:14.
Voluntarily induced intoxication, however, is only a defense when the condition "has precluded the presence of a specific criminal intent or of a special knowledge required in a particular crime ...", R.S. 14:15 (It will not excuse a general intent crime.)
The main issue before us is whether the trial judge was mandated to include an instruction to the jury presenting whether legal insanity can be produced by voluntarily induced intoxication. Although we agree it should have been given to the jury, the issue to be resolved is whether this was reversible error or not.
Expert evidence adduced at trial indicated that defendant may have suffered from a cocaine induced psychosis at the time of the homicide, which, if so, could render him incapable of knowing right from wrong at that time. Although the experts believed that ingestion of cocaine could induce a psychosis, there was divergent opinion whether this state of mind existed in defendant Dean at the time of the crimes.
Dr. Alvaro Hunt, of the Jefferson Parish Coroner's Office, testified that cocaine can induce psychosis, but when asked whether the observations that Dean was "twitching" after the accident would indicate such psychosis, he agreed but explained that trauma such as Dean's head injury suffered in the crash, can also produce twitching.
Dr. S. Emerson, the Charity physician who examined Dean about an hour after the accident, testified that the defendant was at that time aware, which she felt was inconsistent with a cocaine induced psychosis. This doctor was also of the opinion that failure to find evidence of cocaine usage during the physical examination of Dean's eyes, nose, lungs, blood pressure and pulse was inconsistent with cocaine induced psychosis. Likewise, a blood test performed at Charity Hospital showed Dean free of drugs or alcohol.
The defense presented testimony of psychiatrists' Richoux and Cox, each of whom had examined Dean two days after the crime and then at a later point prior to trial. Dr. Richoux felt that if Dean were in a drug induced psychosis he would not have known the wrongness of his conduct, and that, if in such a state at the time of the commission of the offense, the psychosis could have subsided by the time of his arrest, some two to three hours later.
It was Dr. Cox's opinion that defendant has a "psychosis induced by coke" and that as a result his ability at the time of the crimes to distinguish the wrongness of his acts was "certainly impaired"; but he would not opine whether Dean was at that time "totally absent".
The defense also produced an expert in pathology, Dr. Monroe Samuels, who testified that a special type of blood test is needed to screen for cocaine in the system, which the Charity blood test did not appear to be. Neither did this doctor believe that the Charity physician's failure to find evidence *714 of cocaine in her physical examination of Dean contradictory to his prior cocaine ingestion. The doctor explained that cocaine ingestion may or may not produce scar tissue in the nose of the user.
Sergeant Frank Ben, of the New Orleans Police Department Narcotics Division, testified on behalf of the defense. He was qualified as an expert in the field of symptoms and effects of narcotics use, and also the detectability of narcotics use. This witness was of the opinion that a blood test (as was done by Charity Hospital) will always screen negative for cocaine, and that only a urinalysis will show up this drug. The sergeant did not find contradictory to cocaine ingestion, the failure of the Charity physician to detect cocaine residue during her physical examination of Dean's nose. Nor did he find contradictory the fact that Dean was observed to be alert by the Charity doctor, or that he had good memory of the shootings. This witness explained that effects of cocaine vary not only from individual to individual, but also, from one day to the next.
State rebuttal witness, Ronald Siegel, an expert in psychopharmacology, was of the opinion that the fact that the Charity doctor's physical examination of Dean failed to show up cocaine ingestion, indicated that he may not have ingested a large amount of cocaine; and that Dean's reported "twitching" after the accident was from shock reaction to the accident but not from cocaine psychosis. It was this expert's opinion that the position of the gunshot wounds, the lack of random gunfire, and that Dean fled the crime scene indicated a very deliberate act. Siegel also felt that defendant's good memory of the shooting contradicted a psychotic state. Siegel explained that these facts indicated with regard to the crimes that Dean knew "what he was doing and what he had done". It was his further opinion that the shooting was a result of Dean's cocaine dependency. He explained that "users" frequently kill their family members while in a state of paranoia induced by the cocaine. The "users" will have a paranoid belief that the family member is out to steal the drugs on which he is so dependent. Siegel suggested that when Dean was discovered with the cocaine by his mother, he likewise panicked and shot her and his sister in such a paranoid state. Siegel was of the further opinion that true psychosis remains long after the cocaine ingestion and is evidenced by active hallucinations which the person will remember. Dean showed no evidence of such a mental state.
We are of the opinion that this issue of voluntary intoxication by drugs and its influence on the defense of insanity was more than adequately presented to the jury by the evidence, the voir dire examination and by the arguments of counsel.
Accordingly, we find that by not giving this type of charge was harmless error when we review the entire record on the issue.
With regard to defendant's special requested charge Number 7, defendant contends that the evidence disclosed no motive for his killing his mother and sister and thus argues that the trial judge erred in failing to read to the jury this charge:
The law considers that no man does any act without a motive for the doing of it.
If no motive be shown for the act charged, or if none can be reasonably inferred from the evidence, this should be considered favorably to the defendant; but, I charge you, that though proof of motive be important, it is not necessary to establish a motive to warrant a conviction, provided the offense be otherwise made out.
However, motive is not an element of first degree murder as defined in La. R.S. 14:30. The state is not obligated to prove that the accused had a cause or reason to commit the crime of first degree murder; it is required to prove that the accused had the "specific intent" to commit the crime. And in State v. Johnson, 324 So.2d 349 (La.1975) it was held that such a charge or motive should not be given because not wholly correct. La.C.Cr.P. art. 807. The Johnson court further observed *715 that such a charge or motive need not be given when the general charge included an adequate definition of specific intent, and that the state needed to prove that defendant had the specific intent to commit the crime.
The trial judge in the instant case adequately instructed the jury with regard to the definition of specific intent, and that the state needed to prove that Dean had the specific intent to commit the crime. Accordingly, it was not error that special requested charge Number 7 was not read to the jury. These assignments of error lack merit.

ASSIGNMENTS OF ERROR NOS. 3 and 4
Defendant maintains in these assignments of error that the trial court first erred in refusing to allow the defense to voir dire regarding possible post verdict treatment of an insanity acquitee, and, secondly, by not granting a mistrial for prejudicial statements made by the district attorney during voir dire.
During the course of voir dire examination, the trial court curtailed defense inquiry into the attitudes of the prospective jurors regarding post verdict treatment of the insanity acquittee. Specifically, the attorney for the defendant had explained that a verdict of not guilty by reason of insanity "would result in this man being placed in a mental hospital until he is certified as no longer being a menace to himself or the public". Although this is a correct statement of the law when a verdict of not guilty by reason of insanity is returned in a capital case (La.C.Cr.P. art. 654), the State objected to it as incorrect and interjected: "there are other options which are available including the availability for that man to walk right out of this courtroom." The defendant then objected to this statement as prejudicial and grounds for a mistrial, which the trial judge denied.
In support of his voir dire explanation of the automatic commitment provision in article 654 part 1, the defense counsel argued at trial that he needed to address the issue because "... so many ... will not vote for insanity because they think a man is going to be turned loose." However, the trial judge in sustaining the State's objection ruled that the "... question is will they apply the law as I give it to them, whatever the law is and I don't want to get involved in what the possibilities are:"
Defendant here argues that he was prejudiced by the trial court's rulings. He again claims that many have the erroneous belief that an insanity acquittee will simply be turned loose after trial, and that he was entitled to discover whether this attitude existed among the prospective jurors, to determine whether they would be able to impartially apply the law before selected and sworn. Defendant, notes (although erroneously) that the jurors were ultimately charged with those provisions regarding post verdict treatment of the insanity acquittee (La.C.Cr.P. art. 654 et seq.) but suggests that he had no way of knowing whether the jury selected proceeded to trial under a misapprehension of the correct law. Defendant argues that this prejudice was compounded when the court refused to grant a mistrial at the district attorney's comment that defendant could be released if found not guilty by reason of insanity. It can be noted that defense counsel did not ask for the jury to be admonished after the district attorney's statement, which, even if he had, may have been denied as the trial court obviously was unaware of the automatic commitment provision in a capital case as opposed to a noncapital case.
Although a defendant is entitled to full voir dire examination, this right is, however, to be exercised within the discretion of the trial judge who determines the scope of the examination under the prevailing facts and circumstances, La.C.Cr.P. art. 786.
Whenever the question arises whether voir dire examination has been unduly restricted, the entire voir dire examination must be reviewed and considered. In the instant case, although it appears the trial court should not have curtailed the *716 examination of this issue, a review of the entire voir dire shows that except for an explanation of the post verdict treatment of the insanity acquittee, it included explanation of all pertinent law regarding the insanity defense. Further, it appears counsel was permitted to explore the attitude of the prospective juror towards a defendant who pleads the insanity defense, such that their impartiality could be tested with reasonable assurance that any prejudice would have been discovered so as to intelligently exercise the right to challenge for cause or peremptorily. Finally, no juror was selected and sworn before agreeing to apply the law as given by the trial court.
Defendant additionally claims reversible error for failure of the trial court to grant a mistrial on the basis of prejudicial statements made by the district attorney on voir dire.
Mistrial is a drastic remedy and is warranted only when trial error results in substantial prejudice to the defendant sufficient to deprive him of a fair trial, State v. Harris, 383 So.2d 1 (La.1980).
Here it does not appear that this remark made by the State, especially in light of the previous statement made by defense counsel, made it impossible for the defendant to obtain a fair trial.
These assignments of error lack merit.

ASSIGNMENT OF ERROR NO. 6
Defendant complains that four color photographs of the body of each victim is inadmissable and that the State introduced them solely for the inflammatory effect and that they lacked any evidentiary value because the defendant had already confessed to the crimes.
The State at trial argued that the photographs were not inflammatory. Rather, it was argued they were probative to identify the scene as it was first found, and to prove the crime and in what manner it occurred. The trial judge agreed with the state and admitted the photographs into evidence.
To be admissible the probative value of an allegedly gruesome photograph must outweigh its prejudicial effect upon the jury. Generally, photographs of a homicide victim's body which show the fatal wound are relevant to prove the death, to corroborate other evidence of the cause of death, to establish the location, severity, and number of wounds, and to prove the identity of the victim, State v. Lane, 414 So.2d 1223 (La.1982); State v. Jones, 345 So.2d 1157 (La.1977); State v. Trass, 347 So.2d 1156 (La.1977).
Although the existence of a confession to the crimes must necessarily bear upon a balancing of the probative value of the photographs against their prejudicial effect, the decision, nonetheless, remains primarily one for the trial court, State v. Motton, 395 So.2d 1337 (La.1981).
The photographs were included in the record and have been examined for their relevancy, alleged gruesomeness and prejudicial effect. The photograph S22 is a close-up shot of Janice Dean's body as first found laying in the hallway of her house. The photograph S23 is a close up of Harriet Dean's body as first found laying in the kitchen. The photograph S30 was taken at the coroner's office and shows the face and body (with a shirt and underwear on) of Janice Dean. Although gruesome, S22 and S23 are probative and admissible for purpose of identification, to show the crime scene as first discovered, and the manner in which the crimes occurred. That evidence is relevant to show the crux issue contested at trial, that is, that the crimes were intentional. However, S30 is admissible solely to provide corroborative and positive identification of the victim. As Dean had confessed to the murder of his sister, this photograph may have been unnecessary. Nevertheless, because it is the only photograph to clearly show the face of Janice Dean (S22 shows her lying over with her head down as she was shot), and, although unpleasant, it does not exaggerate bloody wounds. Accordingly, we find no prejudicial error on the part of the trial court. See State v. Nelson, 459 So.2d 510 (La.1984); State v. Brogdon, 426 So.2d 158 *717 (La.1983); State v. Tonubbee, 420 So.2d 126 (La.1982).
The photograph S29 depicts the bullet wound of Harriet Dean. It appears probative and admissible to establish the location of the wound, cause of death, and to prove the crime was intentional which as noted above was the crux issue contested at trial.
For those reasons, the trial court properly ruled these photographs admissible. The photographs were admitted not only to identify the victims but also to substantiate the cause and manner of death, and that the crimes were intentional. The photographs' probative value outweighed any possible prejudice it may have created in the jury's mind. Therefore the trial court properly admitted them into evidence. This assignment of error is without merit.

ASSIGNMENT OF ERROR NO. 7
By this assignment counsel argues that the trial court erred in allowing the state to introduce the photograph of a gold rolex watch, S34. The watch had been taken from the defendant's car after the crash. The photograph, S34, was objected to on the grounds that it was irrelevant and introduced solely for the inflammatory purpose of attempting to prove that the defendant was a narcotics dealer, without the prior notice requisite under La.R.S. 15:448, 446.
The general rule is that the prosecution within a reasonable time before trial must furnish in writing to the defendant a statement of other acts or offenses if it intends to offer into evidence specifying the exception to the general exclusionary rule upon which it relies for their admissibility, State v. Goza, 408 So.2d 1349, (La.1982); State v. Ghoram, 328 So.2d 91 (La.1976); State v. Prieur, 277 So.2d 126 (La.1973). In the present case, the State did not give notice. However, it argued at trial that the photograph of the watch was relevant and admissible to support their theory of the case (that defendant shot the victims to protect his cocaine dealing).
In this case, defendant Dean took the stand and admitted to possession and ingestion of cocaine and to its sale for profit. Dean also explained that the Rolex watch (S34) did not belong to him, but that it was security given to him by someone to whom he had loaned $80.00. Counsel makes no argument in brief that Dean's election to testify in his own behalf was induced by the trial court's previous ruling admitting the photograph into evidence. Under these circumstances, while the relevancy of the photograph to any disputed issue at trial was arguable, and the state's failure to give notice improper, State v. Goza, supra, the introduction of the photographs of the Rolex watch is not so prejudicial as to require reversal of Dean's conviction. See State v. Calzadilla, 455 So.2d 1244 (La.App. 4th Cir.1984). This assignment of error lacks merit.

ASSIGNMENT OF ERROR NO. 9
The defendant contends that the trial court erred during the testimony of the defendant, after he had admitted the possession of cocaine, in permitting the State, over defense's objections, to ask the defendant from whom he had bought the cocaine and causing defendant to refuse to answer in the presence of the jury, the said question being totally irrelevant to the issues in the case.
During the State's cross examination of defendant concerning his cocaine dealing, the following question was asked: "I want a name. Who did you buy it [coke] from?" Defendant objected on the grounds of relevancy. The State responded that the name of the seller may be relevant, that he may want to call him. The objection was overruled.
A witness may be examined on the whole case, (La.R.S. 15:280). Relevant evidence is that tending to show the commission of the offense and the intent, (La.R.S. 15:441). A trial judge's determination regarding the relevancy of offered testimony is entitled to great weight and should not be overturned absent a clear abuse of discretion, State v. Huizar, 414 So.2d 741 (La.1982); *718 State v. Miles, 402 So.2d 644 (La.1981); State v. Grabert, 467 So.2d 1327 (La.App. 5th Cir.1985).
In the instant case, defendant had testified on direct examination that he both ingested and sold cocaine. He testified that he remembered shooting his mother and sister but did not have any reason to. It would appear that the State was attempting to show motive for the shootings, that is that the defendant feared what might result now that his mother and sister knew about the cocaine, and that their knowledge could lead to his imprisonment.
The State's question complained of here as irrelevant would therefore appear independently relevant to establish motive for the crimes, (La.R.S. 15:447). We find no evidence of prejudice to the defendant here. This assignment of error lacks merit.

ASSIGNMENT OF ERROR NO. 10
In this assignment the defendant urges that the trial court erred in overruling defendant's motion for a mistrial, when the State, during the testimony of the defense witness, Beth Cascio, asked her whether she knew that the defendant was a dope peddler, when there had been no evidence to that effect and said question was irrelevant to the issues in the case.
At trial defense witness, Beth Cascio, was asked by the State "How do you know he [defendant] was a nice guy if he is a dope peddler?"
Defense counsel objected and at a bench conference moved for a mistrial on grounds that the defendant was referred to in front of the jury as a "dope peddler". Defense counsel concedes that defendant admitted to using and "selling" dope to his friends but claims that this is different from "peddling" dope on the streets. The trial court denied the motion stating as reasons, "I believe he's [defendant] already testified to that. He's admitted to it out of his own mouth."
La.C.Cr.P. art. 770(2) provides that on request by the defense, the trial court shall declare a mistrial when the State has referred directly or indirectly to "[a]nother crime committed ... by the defendant as to which evidence is not admissible."
In this case, although the prosecutor deliberately referred to defendant as a "dope peddler" he did so only after defendant Dean had taken the stand and admitted to the ingestion and sale of cocaine. Under these circumstances, the question complained of here, that Dean was a "dope peddler", shows Dean doing just what he admitted from the stand, and as the trial court observed, is not so strongly prejudicial as to establish grounds for a mistrial, State v. Cushenberry, 407 So.2d 700 (La. 1981). This assignment of error is without merit.
Assignments of Error No. 5 and No. 8 were not briefed and are deemed abandoned. See Uniform RulesCourts of Appeal, Rule 2-12.4. See also State v. Smith, 452 So.2d 251 (La.App. 5th Cir.1984); State v. Becnel, 441 So.2d 339 (La.App. 5th Cir. 1983).
For the foregoing reasons, the conviction and sentence of the defendant are affirmed.
AFFIRMED.
WICKER, J., concurs.
WICKER, Judge, concurring.
I concur with the decree, but not necessarily for the reasons stated in the majority opinion.

APPENDIX

REQUESTED SPECIAL CHARGE NUMBER 1
Louisiana Revised Statutes 14:30 defines first degree murder, in pertinent part, as follows:
"First degree murder is the killing of a human being when the offender has a specific intent to kill or to inflict great bodily harm upon more than one person."
Charles E. Dean, Jr. is charged in the Bill of Indictment with first degree murder, based upon the foregoing Louisiana Revised *719 Statute 14:30. He has entered a dual plea of "Not Guilty" and "Not Guilty by Reason of Insanity."
As is clear by the foregoing definition of first degree murder, it is a crime which, by its very definition, requires a specific intent on the part of the perpetrator in order to justify a convictionspecific intent to kill or inflict great bodily harm on more than one person. Should you find that this defendant did not have the specific intent to kill or inflict great bodily harm on more than one person, you would not be justified in returning a verdict of first degree murder. Should you find that this defendant did not have such specific intent to kill or inflict great bodily harm on anyone, you would not be justified in returning a verdict of either first or second degree murder. If you find that the defendant killed a human being or human beings, and had specific intent to kill or inflict great bodily harm upon more than one person, and no other valid defense is presented to you in accordance with the court's charge, it would be your duty to return a verdict of guilty as charged. If you should find that the defendant killed a human being, but had the specific intent to kill or inflict great bodily harm upon only one person and no other valid defense is presented in accordance with the court's charge, it would be your duty to return a verdict of second degree murder.
Because the defendant has pled "Not Guilty" and "Not Guilty by Reason of Insanity," evidence of insanity or mental defect at the time of the alleged offense is admissible and should be considered by the jury in arriving at a verdict. (State v. Nelson, 459 So.2d 510)
With respect to the plea "Not Guilty by Reason of Insanity," you are to apply the McNaughten Rule, which is codified in Louisiana Revised Statute 14:14, and which reads as follows:
"If the circumstances indicate that because of a mental disease or mental defect the offender was incapable of distinguishing between right and wrong with reference to the conduct in question, the offender shall be exempt from criminal responsibility."
If you should find that the mental condition of the defendant at the time of the commission of the alleged crime does not relieve him of criminal responsibility under this McNaughten Rule, which I have just read to you, your verdict should be adverse to the defendant on his plea of "Not Guilty by Reason of Insanity" and it will then remain for you to consider the question of his guilt or innocence under his plea of "Not Guilty."
You must first decide whether this defendant killed a human being. You must then decide whether he had a specific intent to kill or inflict great bodily harm on more than one person. Should you find that he did kill a human being and that he had a specific intent to kill or inflict great bodily harm on more than one person, it would be your duty to find him guilty of first degree murder providing that no other defense has been established. Should you find that he killed a human being but that he had a specific intent to kill or inflict great bodily harm on one person only, it would be your duty to return a verdict of "Guilty of Second Degree Murder." Should you find that he killed a human being or human beings, but did not have a specific intent to kill or inflict great bodily harm on anyone, you would not be justified in returning a verdict of either first or second degree murder. Louisiana Revised Statute 14:15 provides as follows:
"The fact of an intoxicated or drugged condition of the offender at the time of the commission of the crime is immaterial, except as follows:
(1) Where the production of the intoxicated or drugged condition has been involuntary, and the circumstances indicate this condition is the direct cause of the commission of the crime, the offender is exempt from criminal responsibility.
(2) Where the circumstances indicate that an intoxicated or drugged condition has precluded the presence of a specific criminal intent or of special knowledge required in a particular crime, this fact *720 constitutes a defense to a prosecution for that crime."
This provision of our law should not be applied to the defendant's plea of "Not Guilty by Reason of Insanity," as the McNaughten Rule, as expressed in Louisiana Revised Statute 14:14, and which I have read to you, must govern your decision on that plea.
As stated before, however, this defendant has also entered a plea of "Not Guilty" and in reaching a verdict on that plea, you must be guided by the statutory Criminal Law of Louisiana.
As stated before, the crime of first degree murder, as charged in this case, requires a specific intent to kill or inflict great bodily harm upon more than one person. Likewise, the crime of second degree murder requires a specific intent to kill or to inflict great bodily harm on the victim.
You will recall that I have given you the provisions of Louisiana Revised Statute 14:15 which, as stated before, reads as follows:
"The fact of an intoxicated or drugged condition of the offender at the time of the commission of the crime is immaterial, except as follows:
(1) Where the production of the intoxicated or drugged condition has been involuntary, and the circumstances indicate this condition is the direct cause of the commission of the crime, the offender is exempt from criminal responsibility.
(2) Where the circumstances indicate that an intoxicated or drugged condition has precluded the presence of a specific criminal intent or of special knowledge required in a particular crime, this fact constitutes a defense to a prosecution for that crime."
In view of these provisions of our statutory law, if you find that this defendant, because of an intoxicated or drugged condition was unable to entertain a specific criminal intent to kill anyone or to inflict great bodily harm upon a human being, it would be your duty to return a verdict of "Not Guilty," even though the condition was voluntarily induced by the defendant.
I must emphasize to you that this defense of inability to entertain the intent to kill or inflict great bodily harm on anyone does not apply to defendant's plea of "Not Guilty by Reason of Insanity" and is only applicable to the other portion of his dual pleathe plea of "Not Guilty."

REQUESTED SPECIAL CHARGE NUMBER 2
As stated before, the defendant has entered a combined plea of "Not Guilty" and "Not Guilty by Reason of Insanity." Under the circumstances, Article 651 of the Louisiana Code of Criminal Procedure requires that the two defenses be tried together. You must therefore arrive at a verdict only after having considered both defenses, and having determined whether the facts render the conduct of the accused excusable under either plea, "Not Guilty" or "Not Guilty by Reason of Insanity."
In arriving at this determination with respect to the plea of "Not Guilty by Reason of Insanity," you are to be governed by what is commonly known as the McNaughten Rule. This rule is set forth in Louisiana Revised Statute 14:14, and reads as follows:
"If the circumstances indicate that because of a mental disease or mental defect the offender was incapable of distinguishing between right and wrong with reference to the conduct in question, the offender shall be exempt from criminal responsibility."
Should you find that the defendant, because of a mental disease or mental defect, was incapable of distinguishing between right and wrong with reference to the conduct in question, you must return a verdict of "Not Guilty by Reason of Insanity."
For the reason thatsanity is the normal condition of man, the defendant has the burden of establishing the defense of insanity at the time of the alleged offense by a preponderence of the evidence (Art. 652 La. Code of Criminal Procedure). This is a lesser degree of proof than proof beyond a *721 reasonable doubt. It is proof that satisfies the mindthe more believable evidence.
If you find this defendant is "Not Guilty by Reason of Insanity," you should state in your verdict that he was found "Not Guilty by Reason of Insanity" (Article 805, Louisiana Code of Criminal Procedure), as this brings into play the provisions of Article 654 of the Louisiana Code of Criminal Procedure and makes it mandatory that the Court commit the defendant to a mental institution for custody, care and treatment until it is determined that he is no longer a danger to others or to himself.
Our law does not distinguish between a mental defect brought on by the voluntary action of a defendant, and one that is involuntary, so long as the defect is of such severity as to render the defendant incapable of distinguishing between right and wrong with reference to the conduct in question.
Accordingly, should you find that the preponderance of the evidence shows that the defendant voluntarily took into his body a foreign substance, and that, as a result thereof, he became the victim of a mental defect that rendered him incapable of distinguishing between right and wrong with reference to the conduct in question, it would be your duty to render a verdict of "Not Guilty by Reason of Insanity."
NOTES
[1] See Appendix for Special Charges No. 1 and No. 2.