665 So.2d 581 (1995)
STATE of Louisiana
v.
Garrett JAMES.
No. 95-KA-566.
Court of Appeal of Louisiana, Fifth Circuit.
November 28, 1995.
*582 John M. Crum, Jr., District Attorney and William D. O'Regan, III, Assistant District Attorney, Parish of St. John the Baptist, 40th Judicial District Court, Edgard, for Plaintiff/Appellee.
John Wilson Reed, Glass & Reed, New Orleans, for Defendant/Appellant.
Before BOWES, DUFRESNE and GOTHARD, JJ.
GOTHARD, Judge.
The defendant, Garrett James, appeals his conviction for attempted manslaughter. For the following reasons, we affirm.

FACTS
Around midnight on June 25, 1994, Letisha Millet ("Millet") and several of her friends were leaving a pool party in St. John the Baptist Parish. On the way to her car, Millet encountered the defendant, an acquaintance of hers from school. While they were talking, the defendant raised a gun and put it against Millet's face. Millet pushed the defendant's hand and the gun away, stating "get that out of my face." The defendant raised the gun again, pulled back the slide, and shot Millet in the face. Millet had three teeth knocked out and suffered damage to her tongue and sinus cavity but, miraculously, did not sustain a life threatening injury.
Testimony at trial revealed that, prior to the shooting, the defendant had not said anything that indicated that he wanted to harm Millet. Further, there was no history of violence, animosity, or arguments between the defendant and Millet or any of her friends.
During her testimony, Millet stated that she knew the defendant socially for five or six years and that she had always had a friendly relationship with him. Millet further testified that at the time of the shooting the defendant did not say anything indicating that he meant to harm her, nor did she see an expression of anger on his face. Two friends of the victim testified that the exchange between Millet and the defendant seemed to be friendly until the time of the shooting.
The defendant testified that he had the gun in his possession to "show it off." He further stated that he did not know why he pulled back the slide on the gun when he raised it up; however, he did not expect it to fire. The defendant testified that he was shocked when the gun fired and that he initially did not realize that Millet was shot. Instead, he believed that she was "playing." It was not until the defendant saw Millet bleeding that he realized she had indeed been shot. The defendant then left the scene without giving any assistance to his victim. Shortly thereafter, the defendant was arrested at home. He gave a statement to the police in which he admitted to the shooting but explained that it was accidental as he had been "clowning around" with the victim.
The defendant was indicted and pled not guilty to a charge of attempted second degree murder, a violation of La.R.S. 14:30.1. *583 The jury returned a responsive verdict of guilty of attempted manslaughter. The trial court sentenced the defendant to serve 60 months with the Department of Corrections with credit for time served. The defendant has appealed based on the jury instructions given by the trial court.

ASSIGNMENTS OF ERROR
The defendant assigns the following errors by the trial court: (1) the trial court erred in charging the jury that it could infer that the defendant intended the "natural and probable consequences of his acts," without qualifying and limiting the term "acts" to those that were "deliberate, intentional, or voluntary"; (2) the trial court erred in failing to instruct the jury that, although motive was not an element of the offense, the jury could consider any evidence tending to show lack of motive on the part of the defendant.

DISCUSSION
It is well settled that a specific intent to kill is an element of the crime of attempted manslaughter. State v. Scott, 490 So.2d 396, 403 (La.App. 5th Cir.1986), habeas corpus denied, 934 F.2d 631 (5th Cir.1991). The issue of intent is particularly important in this case because there is no doubt that the defendant shot the victim. The only question is whether the shooting was accidental, as the defendant argues, or whether the defendant intended to kill Millet, as the state argues.
In his first assignment of error the defendant argues that the trial court gave an improper instruction to the jury which led it to find the requisite intent to convict the defendant of attempted manslaughter. The challenged instruction is as follows:
You may infer that the defendant intended the natural and probable consequences of his acts.
The defendant argues that because of the peculiar facts present in this case the foregoing instruction should have been limited to those acts which were "intentional, deliberate, or voluntary." That is, the defendant asserts that based on the instruction the jury could infer the requisite criminal intent without first finding that the defendant had intentionally fired the gun. The defendant's argument is based on the fact that the jury could have concluded that the natural and probable consequences of the defendant's negligent handling of the gun were the injuries suffered by Millet.
The standard for reviewing jury charges requires that the charges be read as a whole. A trial court charges a jury by presenting to the jury his entire instructions. Thus, any appellate review should always consider the entire presentation. State v. Parker, 506 So.2d 675, 684 (La.App. 5th Cir.), writ denied sub nom. State v. Tell, 512 So.2d 456 (La.1987).
The challenged instruction herein constituted a permissive inference, as opposed to a mandatory presumption. A permissive inference is an evidentiary device which allows "the trier of fact to infer the elemental fact from proof by the prosecutor of the basic one and which places no burden of any kind on the defendant." County Court of Ulster County, New York v. Allen, 442 U.S. 140, 156-58, 99 S.Ct. 2213, 2224-26, 60 L.Ed.2d 777 (1979). Although "less troublesome" than a mandatory presumption, a permissive inference is nevertheless subject to due process scrutiny. Id. Unlike a mandatory presumption, which is reviewed on its face, a permissive inference is analyzed according to the particular facts and circumstances of a case. Id.
In Ulster County, supra, the United States Supreme Court upheld an inference that the occupants of a vehicle were in possession of weapons found therein. The Court reasoned that there was a "`rational connection' between the basic facts that the prosecution proved and the ultimate fact presumed, and the latter is `more likely than not to flow from' the former." Id. at 165, 99 S.Ct. at 2229.
In the instant case, the basic fact proved by the prosecution is that the defendant shot the victim in the face. The ultimate fact presumed is that the defendant intended to shoot the victim. Based on Ulster County, supra, we must determine whether there is a "rational connection" between the two.
*584 Having reviewed the record and the jury charges as a whole, we agree with the defendant that the rational connection between the basic fact proved and the ultimate fact presumed is lacking. We base our holding on the particular facts present in this case. There is no evidence of any animosity or hostility between the defendant and the victim prior to the shooting. There is also no evidence that the defendant and the victim were arguing at the time of the shooting. In short, there is nothing to indicate that the defendant and the victim were engaged in anything other than a friendly conversation at the time of the shooting.
The ultimate fact to be proved in this case was whether the defendant intended to shoot the victim. The trial court's instruction allowed the jury to infer intent on the part of the defendant from the fact that he pointed a gun in the victim's face. However, the fact that the defendant pointed the gun in the victim's face does not answer the ultimate question of whether he intended to pull the trigger or whether the shooting was accidental. Therefore, we conclude that the trial court erred in not limiting the challenged instruction to those acts committed by the defendant that were "deliberate, intentional, or voluntary."
However, this is not the end of our inquiry. In State v. Jynes, we held that an erroneous jury instruction is subject to harmless error review. 94-745 (La.App. 5th Cir. 3/1/95), 652 So.2d 91, 98. The appropriate standard for determining harmless error is "`not whether, in a trial that occurred without the error, a guilty verdict would surely have been rendered, but whether the guilty verdict actually rendered in the instant trial was surely unattributable to the error.'" Id., citing Sullivan v. Louisiana, 508 U.S. 275, ___, 113 S.Ct. 2078, 2081, 124 L.Ed.2d 182 (1993), on remand, 623 So.2d 1315 (La. 1993).
In the instant case, the defendant admits that he behaved negligently but argues that he did not intend to shoot his victim. In this regard, the trial court instructed the jury as to criminal negligence, which is a non-responsive verdict to the charged offense. The trial court correctly informed the jury that it would have to acquit the defendant if it found that he had only committed the offense of negligent injuring. As the jury did not acquit, it is clear that it rejected the defendant's argument that the shooting was accidental. That is, despite the erroneous instruction, the jury considered whether the defendant intended to shoot the victim and concluded that he did. Therefore, we find that the guilty verdict in this case is unattributable to the erroneous instruction given by the trial court. Accordingly, the instruction constitutes mere harmless error and, as such, does not warrant reversal.
In his second assignment of error, the defendant argues that the trial court erred in failing to instruct the jury on the absence of motive in this case. Relying on State v. Mart, 352 So.2d 678 (La.1977), the defendant proposed the following instruction:
Motive is not an element of any offense in this case and the state has no burden to prove motive or to prove it beyond a reasonable doubt. However, in considering whether the defendant is guilty or not guilty of the charges, you may consider any evidence tending to show a motive on his part and any evidence tending to show a lack of motive.
The trial court denied the proposed instruction on the grounds that it "call[ed] undue attention to motive."
La.C.Cr.P. art. 807 provides that a "requested special charge shall be given by the court if it does not require qualification, limitation, or explanation, and if it is wholly correct and pertinent." However, a special charge "need not be given if it is included in the general charge or in another special charge to be given." Id.
In State v. Mart, supra, the Louisiana Supreme Court addressed a situation where the trial court gave a general charge on motive but refused to give the defendant's requested special charge on lack of motive. The court reasoned that "[o]nce a charge concerning motive was given, the charge was incomplete, since affirmative evidence disclosed lack of motive...." Mart, 352 So.2d at 681. Thus, the court concluded that the *585 jury should have been charged that the lack of motive could be considered in assessing specific intent. Id.
However, in State v. Johnson, the court held that a special charge on lack of motive was not required. 324 So.2d 349, 353 (La. 1975). The court reasoned that the special charge was unnecessary when the general charge adequately defined specific intent and explained the need for the state to prove specific intent in order to convict the defendant. Id. Subsequently, in State v. Dean, we followed Johnson and held that a special charge on lack of motive was not required because the substance of that special charge had been included in the general charge. 487 So.2d 709, 714-15 (La.App. 5th Cir.), writ denied, 495 So.2d 300 (La.1986).
In the instant case, we find that the defendant's reliance on Mart is misplaced. In Mart, a general charge on motive was given. Thus, a special charge was required to modify that general charge. Here, no general charge on motive was given; therefore, Mart is inapplicable to the present case.
Instead, we find Johnson, supra, to be controlling. As in Johnson, in this case the trial court's general charge to the jury adequately defined specific intent and related that the state had to prove specific intent on the part of the defendant. This is sufficient to satisfy the standard of La.C.Cr.P. art. 807 that a special charge need not be given if its substance is included in the general charge. Accordingly, the defendant's second assignment of error is without merit.
Finally, we have performed an error patent review of the record pursuant to La. C.Cr.P. art. 920, which provides:
"The following matters and no others shall be considered on appeal: (1) An error designated in the assignment of errors; and (2) An error that is discoverable by a mere inspection of the pleadings and proceedings and without inspection of the evidence."
For the purpose of an error patent review the "record" in a criminal case includes the caption, the time and place of holding court, the indictment or information and the endorsement thereon, the arraignment, the plea of the accused, the bill of particulars filed in connection with a short form indictment or information, the mentioning of the impaneling of the jury, the minute entry reflecting sequestration in a capital case, the verdict, and the judgment or sentence. See State v. Oliveaux, 312 So.2d 337 (La.1975); State v. Weiland, 556 So.2d 175 (La.App. 5th Cir.1990). Our review of the record reveals no errors patent.
Based on the foregoing, the conviction and sentence of the defendant is affirmed.
AFFIRMED.